423 F.Supp. 751 (1976)
VOSS, René LaRaine, a minor, by her mother and next friend Eileen Voss, and Voss, Scott David, a minor, by his mother and next friend Eileen Voss, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 75-810C(4).
United States District Court, E. D. Missouri, E. D.
November 19, 1976.
*752 Jerome F. Raskas, Raskas, Ruthmeyer, Schneider & Pomerantz, St. Louis, Mo., for plaintiffs.
Barry A. Short, U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiffs, René LaRaine Voss and Scott David Ross, both minors, brought suit, by their mother and next friend, Eileen Voss, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., seeking damages for the wrongful death of their father, William Voss.
This case was tried to the Court without a jury. Having considered the pleadings, the evidence, the stipulation of the parties, and being otherwise fully advised in the premises, the Court hereby makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. René LaRaine Voss and Scott David Ross, both minors, reside in St. Louis County, Missouri and are the children of William Voss, deceased. Said children were dependent upon William Voss for their support, maintenance and welfare at the time of Voss' death.
2. The Veterans Administration is an agency of the government of the United States of America, and operates the Veterans Administration Hospital at Jefferson Barracks, Missouri.
3. William Giles, a veteran of the United States Army, was admitted to the Veterans Administration Hospital at Jefferson Barracks on April 13, 1974 following a threat to blow up a VFW Hall. He was brought to the hospital by the St. Louis County Police. Giles, however, was a voluntary patient, and it was his first visit to the hospital.
4. Upon admission, Giles was interviewed by Dr. Johanna Fetmer. Dr. Fetmer, who was serving a medical residency at the hospital under the supervision of Dr. Thomas Moran, made a tentative diagnosis of "anxiety reaction?", "Paranoid personality?". Giles was placed in an open ward, in which doors were normally left unlocked.
5. It was the overwhelming consensus of the doctors who testified herein that an open ward is more conducive to the establishment of a therapeutic atmosphere in which the patient comes to trust the doctors, than is a locked ward situation.
6. Shortly after his admission, on April 15, 1974, Giles was given a battery of tests. The results of these tests were discussed informally with Dr. Fetmer and were later incorporated in a written report. The tests indicated presence of paranoid schizophrenia but did not conclusively establish that Giles was dangerous either to himself or others.
7. Giles' case was discussed frequently at team meetings and during informal staff discussions.
8. On April 19, 1974, Giles left the hospital. Since he was a voluntary patient, he did not escape from the hospital. This leaving is called an "elopement".
9. Giles returned on April 21, 1974 voluntarily. At a staff meeting on April 22, 1974, Giles' case was discussed and it was decided that Giles would be left in the open ward but watched more closely. This decision was reached in part because it was felt that Giles was not dangerous to himself or others.
10. On April 22, 1974, Giles again left the hospital.
11. The Court finds that the hospital was not negligent in its diagnosis of Giles. The Court further finds that the hospital was not negligent in failing to restrain Giles or in failing to seek judicial commitment.
12. On April 24, 1974, William Voss, deceased, was driving on Ashby Road. Mary O'Brien was a passenger in his car. Voss stopped his car on Ashby and observed Giles, who was crossing in front of their *753 car, carrying a .22 caliber rifle. Giles stopped in front of the car and pointed the rifle towards the windshield of the car. Giles then continued walking. Voss continued driving but decided to return to Giles because of the danger Giles presented to a neighborhood in which there were children. Accordingly, he drove his car around several blocks in order to circle back to Giles. During this return drive, Ms. O'Brien pointed out to Voss that there was a police car a few cars ahead of them and suggested that Voss inform the police. Instead, Voss continued driving. Voss observed Giles walking on Driver Avenue and brought his car to a stop somewhat ahead of where Giles was walking. Voss left the car and shouted to Giles "Hey, jackoff, what are you doing pointing a fucking gun at people?". Moments later, Giles shot Voss with the rifle. Voss died as a result of this shooting.
13. On March 25, 1975, plaintiffs formally made a claim with the Veterans Administration under the Federal Torts Claims Act, 28 U.S.C. § 2671 et seq. This claim was disallowed on August 14, 1975.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to the suit. 28 U.S.C. § 1346.
Plaintiffs contend that defendant is liable because the hospital was negligent in its diagnosis and supervision of Giles. The Court disagrees. The Court has found that the hospital was not negligent as a matter of fact in either diagnosis or supervision. It has been repeatedly noted that psychiatry is not an exact science. Hicks v. United States, 167 U.S.App.D.C. 169, 511 F.2d 407 (1975); Baker v. United States, 226 F.Supp. 129 (S.D.Iowa 1964), aff'd, 343 F.2d 222 (8th Cir. 1965); White v. United States, 244 F.Supp. 127 (E.D.Va.1965). A hospital is not an insurer, Eaby v. United States, 298 F.Supp. 959 (D.D.C.1969), but instead is required only to give
such care to a patient as the hospital knew or in the exercise of reasonable care should have known was required. This duty is measured by the degree of care, skill and diligence customarily exercised by hospitals generally in the community. Baker v. United States, supra at 132.
As noted in Hicks v. United States, supra at 417, this standard of care "must take into consideration the uncertainty which accompanies psychiatric analysis".
The open ward itself does not compel this Court to conclude that defendant was negligent. See Eanes v. United States, 407 F.2d 823 (4th Cir. 1969); Bannon v. United States, 293 F.Supp. 1050 (D.C.R.I.1968); Baker v. United States, supra at 132 (".. the objective is treatment not merely incarceration. Treatment requires the restoration of confidence in the patient. This in turn requires that restrictions be kept at a minimum."); Gregory v. Robinson, 338 S.W.2d 88, 94 (Mo. banc 1960) ("Giving him the freedom of this ward was a `calculated risk', assumed in the light of the modern concepts of treatment.").
Assuming arguendo that the hospital was negligent, the Court must conclude that plaintiffs' decedent was contributorily negligent as a matter of fact, thus precluding recovery. In Walsh v. Southtown Motors Company, 445 S.W.2d 342 (Mo.1969), in reference to contributory negligence of a pedestrian, the court stated:
Plaintiff had the right to assume that any cars that might appear on the scene after she looked would be operated lawfully and not at an excessive speed, and therefore conceivably could have concluded that the way was clear and that she had ample time to cross the street before any potential vehicular traffic would reach her cross path. She was not required to anticipate that some driver would disobey the traffic laws. [citations omitted]. That right, however, did not entitle her to abandon all care for her own safety. She was obliged to continue to exercise ordinary care, and could not blindly walk into the path of danger in total reliance upon the duty of the operators of motor vehicles to exercise the highest degree of care. Id. at 347-48.
In the instant case, the facts show that decedent did in fact abandon all care for his *754 safety. His actions under the circumstances clearly establish that he was contributorily negligent.
Plaintiffs argue that decedent was unaware that Giles had eloped from the hospital and was therefore unaware of the danger. Thus, plaintiffs argue, decedent could not have been contributorily negligent. Cf., Weisman v. Herschend Enterprises, Inc., 509 S.W.2d 32 (Mo.1974); Shute v. Prom Motor Hotel, Inc., 446 S.W.2d 137 (Mo.App.1969); Bollman v. Kark Rendering Plant, 418 S.W.2d 39 (Mo.1967). The Court, however, must conclude that the facts known to decedent at the time he approached Giles were sufficient to apprise him of the danger and risk of injury. Decedent approached a man armed with a rifle. This man had previously stopped in the middle of crossing a street and pointed the rifle at decedent for no apparent reason. Decedent had the opportunity to inform the police of the situation but chose not to. The language decedent used in confronting Giles was, at the very least, extremely inflammatory language to use to a man holding a rifle. The Court must conclude that decedent was contributorily negligent.
Accordingly, judgment will be entered for defendant.