Ruth HOWARD, Respondent,

v.

RESEARCH HOSPITAL AND MEDICAL
CENTER, INC., Appellant.

No. KCD 28842.

Missouri Court of Appeals,
Kansas City District.

Feb. 27, 1978.

John M. Kilroy and W. James Foland,
Kansas City, for appellant; Shughart,
Thomson & Kilroy, Kansas City, of counsel.

M. Randall Vanet, Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD,
C. J., and DIXON, J.

PRITCHARD, Presiding Judge.

Respondent, having had the verdict of a
jury against her, was granted a new trial
because of error in giving Instruction No. 5
upon her contributory negligence in failing
to call nurse assistance to get out of bed,
and in ripping off a "Posey" (a restraining
device), in that it omitted the element of
whether or not she was in a confused or
disoriented condition at the time of her fall.

Appellant contends that respondent
failed to make a submissible case of its
negligence, as submitted, that it failed
properly to restrain respondent or failed to
provide her with adequate nursing supervision. The evidence bearing upon that submission is as follows:

Respondent, being then 76 years old and weighing 100 pounds, was admitted to appellant hospital on October 8, 1973. She testified that she had no recollection of arriving at the hospital, and her doctor testified that her blood loss made her pale, weak and dizzy. At 10:45 p. m. that day, she was given 500 mgs. of Doriden, a sleeping medication which takes 4 to 8 hours to wear off. At 9:30 p. m. on the following day, respondent was given an additional 500 mgs. of Doriden. Prior to the latter time, respondent was visited by nurses, Mary Ellsberry and Edna Foster, for about 15 minutes, at which time Mary testified that respondent was very tired, sleepy and listless. At about 11:30 p. m., respondent's bed was placed in the low position, its wheels were locked in place, and the side rails were put up at about midnight, at which time her vital signs were taken, the nurse's entry showing that she appeared quite sleepy. At 12:30 a. m., October 10, 1973, respondent was found on the floor next to her bed, and she told the nurse that she was going to the bathroom. Respondent was then placed back in bed and upon a bedpan, and she was found asleep by a nurse thereon at 12:45. She was awakened at 1:10 a. m. to remove the bedpan, which did not contain any blood or stool. At that time the nurse told respondent to call for assistance if she needed to go to the bathroom, and a Posey restraint, a nurse's decision, was applied. The head nurse, who placed the Posey on respondent, could not recall if she put it on tightly or loosely, which is also a nurse's decision—if put on loosely, it serves as a reminder not to get out of bed; if tied tightly, it would prevent the patient from getting out of bed. If the Posey is too loose, the patient gets out of it.

Respondent's doctor testified further that respondent must have been confused when she was found out of bed (on the floor) at 12:30 a. m. Nurse Reynolds testified that the reason respondent was told to call for assistance in going to the bathroom was for her safety, and because she was under a sedative, she might hurt herself if she tried to get up by herself.

Between 1:10 a. m. and 5:15 a. m., the nurses on duty periodically looked in upon respondent and observed her sleeping. At the latter time, respondent was found on the floor by her bed, the straps of the Posey being still attached to the bed. The Posey was not defective. Respondent was then x-rayed and it was found that she had fractured her hip, and surgery was performed thereafter to correct it, and respondent was discharged from the hospital on November 2, 1973.

The incident report stated that respondent's "apparent condition before incident" was that she was "disoriented", and a Dr. Willoughby's comment thereon was that she was disoriented, sedated, and not normal and alert. Respondent remembered only that when she first fell, she "had the feeling [that she] was going just round and around and around" and she remembered a commotion in the room and a nurse's comments. She did not remember a restraint being placed upon her or that she was given specific instructions.

▮▮▮ Obviously, considering the foregoing facts in the light most favorable to respondent in support of her case, she made a submissible case of negligence against appellant. Of importance in this regard is respondent's known debilitation from blood loss which made her pale, weak and dizzy. She required a sleeping medication. She had fallen to the floor from her bed once before the fall which caused her injury. It was for the jury to determine if respondent had been properly restrained by the "Posey" or whether she had been sufficiently supervised by attending nurses. The thrust of appellant's argument is that respondent was required to present expert evidence as to proper application of the "Posey" restraint, and as to proper nurse supervision, to demonstrate a departure from appellant's standard of care. In *Steele v. Woods*, 327 S.W.2d 187, 198[18] (Mo.1959), the court noted that it is usually necessary to prove by expert testimony from members of the medical profession that the skill or technique used did not conform to the standards of the profession, and said further, "But

where the conduct in question does not involve skill or technique in an area where knowledge of such is a peculiar possession of the profession and does involve a matter which any layman (or court) could know, then such 'professional' testimony is not necessary. [Citing authority and cases in footnote 25]." Cases cited by appellant, *Williams v. Chamberlain,* 316 S.W.2d 505 (Mo.1958); *Swope v. Printz,* 468 S.W.2d 34 (Mo.1971); and *James v. Sunshine Biscuits, Inc.,* 402 S.W.2d 364 (Mo.1966) [expert testimony necessary to show proximate cause of death], involve charges of medical malpractice or charges of wrongful death where without expert testimony "a jury may not know (or guess) whether the defendant's acts did or did not conform to the required standards." *Chamberlain,* supra, 316 S.W.2d 511[2–6]. So also in *Fisher v. Wilkinson,* 382 S.W.2d 627 (Mo.1964), but where the court noted, at page 632[7], "It is recognized that in certain cases involving malpractice the testimony of an expert witness is not always necessary to make a submissible case for the jury." More appropriate to the facts of this case are these cases following: *Norris v. Rowan Memorial Hospital, Inc.,* 21 N.C.App. 623, 205 S.E.2d 345 (1974), where plaintiff alleged that hospital employees were negligent in failing to raise side rails on her bed, from which she fell, and failed to give her proper attention. The court reversed the direction of the verdict for defendant and said, page 348[1–3], "Where, as here, the alleged breach of duty did not involve the rendering or failure to render professional nursing or medical services requiring special skills, expert testimony on behalf of the plaintiff as to the standard of due care prevailing among hospitals in like situations is not necessary to develop a case of negligence for the jury"; *Morningside Hospital & Training School for Nurses v. Pennington,* 189 Okl. 170, 114 P.2d 943 (1941), where the court said that the question of what was the proper method of restraint (where deceased fell out of bed) was for the jury; *McCoy v. Wesley Hospital and Nurse Training School,* 188 Kan. 325, 362 P.2d 841, 851[7] (1961), where deceased fell out of bed after surgery and while under sedation and anesthetics, the court saying, "It has been held a hospital must exercise toward a patient such reasonable care as his known condition may require, and that degree of care is in proportion to his known physical and mental ailments"; *D'Antoni v. Sara Mayo Hospital,* 144 So.2d 643 (La.App.1962) (the raising of bed side rails is a mechanical act which any unskilled person can perform); *Ford v. Vanderbilt University,* 40 Tenn.App. 87, 289 S.W.2d 210, 213 (1955). Here, a lay juror would know whether a properly placed "Posey" would have prevented respondent's getting out of bed, and whether more supervision than was given would have prevented the fall. Expert testimony on those subjects was not necessary, and the trial court did not err in overruling appellant's motion for directed verdict.

■ Instruction No. 5 is:

"Your verdict must be for the defendant, whether or not defendant was negligent; if you believe:

First, plaintiff failed to follow the instructions of the nurse to call for assistance to get out of bed, or plaintiff ripped off the Posey placed upon her, and

Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First was negligent, and * * *."

The propriety of the trial court's grant of a new trial because of error in giving this instruction is sustained by the case of *Koirtyohann v. Washington Plumbing & Heating Co.,* 471 S.W.2d 217, 221[6] (Mo.1971). There, the order of new trial was affirmed because the contributory negligence instruction failed to submit knowledge and appreciation of danger of plaintiff in working in an unshored ditch, and of other conditions therein. The court said, "In a situation in which one's knowledge of general conditions from which danger arose is not necessarily knowledge and appreciation of that danger, before one charged with contributory negligence can be convicted thereof, there must be a finding that he acted or

failed to act with knowledge and appreciation, actual or constructive, of the danger of injury which his conduct involved. *Bledsoe v. Northside Supply & Development Co.,* Mo., 429 S.W.2d 727; *Davidson v. International Shoe Co.,* Mo., 427 S.W.2d 421." Here, Instruction No. 5 ignored the evidence and issue as to respondent's mental condition, and omitted any requirement as to her contributory negligence of a finding that she have knowledge and appreciation of the danger of failing to call for assistance in getting out of bed, or removing the Posey restraint. As in Koirtyohann, the instruction was prejudicially erroneous. See the inclusion of the omitted finding, held proper after retrial, in *Koirtyohann v. Washington Plumbing & Heating Co.,* 494 S.W.2d 665, 666 (Mo.App.1973). Upon retrial, the parties may consider the advisability of defining negligence as may be submitted in any contributory negligence instruction.

The judgment is affirmed.

All concur.