M. W., a minor, by her guardian, D. H. W., Appellant,

v.

JEWISH HOSPITAL ASSOCIATION OF ST. LOUIS, a corporation, Respondent.

No. 44197.

Missouri Court of Appeals, Eastern District, Division One.

May 4, 1982.

Motion for Rehearing and/or Transfer Denied June 18, 1982.
Application to Transfer Denied Sept. 13, 1982.

James L. Homire, Jr., St. Louis, for appellant.

Moser, Marsalek Carpenter, Cleary, Jaeckel & Keaney, Robert Rosenthal, Parks G. Carpenter, St. Louis, for respondent.

CRANDALL, Judge.

This is a suit by appellant, by and through her guardian, against respondent for actual and punitive damages. The trial court directed a verdict on the punitive damage count and submitted the case to the jury on the issue of actual damages only. Respondent received a verdict in its favor. Judgment was entered in accordance with the jury verdict, appellant's motion for new trial was overruled, and this appeal ensued. We affirm.

There was evidence adduced in this case, some of which was disputed, that M. W. was a teenage female diagnosed as a schizophrenic. She was admitted to Jewish Hospital in 1972 for treatment of her mental condition and was put on a floor specifically designed for the treatment and care of mentally ill patients. M. W. was in an "open ward" in which patients of both sexes were free to leave their rooms and meet in the hallways and lounges. The purpose of her hospitalization was to allow her to "function better in reality" and to help her act in as normal a way as possible. The degree of supervision was part of her therapy. Isolation from the other patients and constant supervision might have resulted in a deterioration of her condition. M. W. testified that while she was a patient in the hospital she engaged in oral sex and sexual intercourse with various male patients on her floor. This activity resulted in an exacerbation of her mental condition. There was also evidence that the hospital had

prior notice of the sexual proclivities of the male patients and of appellant's frequent violation of the rules and regulations of the hospital. The case was submitted to the jury on the theory of improper supervision of M. W. by the hospital.[1]

The primary issue raised on appeal concerns the proper definition of negligence. Appellant offered MAI 11.07, which defines negligence as "failure to use ordinary care." The trial court refused to give that instruction and instead gave MAI 11.06, a malpractice instruction, which defined negligent or negligence as "failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of [respondent's] profession."

Appellant argues that this is not a malpractice case and therefore the trial court erred in giving MAI 11.06. She contends that "the question is not whether a therapy plan which prescribes lax supervision in order to foster social interaction of a patient is negligence. The question is whether the respondent in administering the alleged therapy plan negligently allowed narm to be done to [appellant.]"

Two separate rules have evolved concerning the standard of care due a patient from a hospital.[2] They were clearly summarized in *Kastler v. Iowa Methodist Hospital*, 193 N.W.2d 98 (Iowa 1971). If the conduct in question is professional in nature, then the applicable standard is the care exercised by hospitals generally (or by the hospitals in the community). If the conduct involves a nonmedical, administrative, ministerial or routine care, then the applicable rule is such reasonable care as the patient's known condition may require (in other words, ordinary care.)[3] *Id.* at 101. In this case we find that the trial court properly instructed the jury on the standard

of care. M. W. was admitted to Jewish Hospital for care and treatment, not merely observation or incarceration. This treatment requires the restoration of confidence in the patient which in turn requires that restrictions be kept at a minimum. *Voss v. United States*, 423 F.Supp. 751, 753 (E.D. Mo.1976). Certainly appellant could have been kept safe by strict confinement, but "curing" her by that method may have been impossible. Giving her the freedom of this ward was a "calculated risk" assumed in light of the modern concepts of treatment. *Gregory v. Robinson*, 338 S.W.2d 88, 94 (Mo. banc 1960). The degree of supervision and the treatment of appellant in the case were inexorably connected, therefore the determination of the proper degree of supervision was a *medical* judgment made within the confines of the inexact science of psychiatry. The propriety of that medical judgment is to be measured against the "skill and learning ordinarily used under the same or similar circumstances by members of [respondent's] profession." MAI 11.06. The trial court properly instructed the jury.

As previously mentioned, not every case requires this standard. Those cases where conduct involves nonmedical, administrative, ministerial or routine care require only a finding that the hospital breached the obligation of ordinary care. The primary case cited by appellant falls within this category. In *Stallman v. Robinson*, 364 Mo. 275, 260 S.W.2d 743 (1953), a patient who had previously attempted suicide on more than one occasion and who was known by the hospital to be suicidal was left unobserved for a period of time, during which she hanged herself using strips of her nightgowns. The court held that an ordinary care standard was appropriate. Keeping a

---

1. Plaintiff's verdict director was as follows:

    "Your verdict must be for the plaintiff if you believe:

    First, defendant failed to provide adequate supervision of plaintiff to safeguard and protect her from sexual abuse in view of her known mental condition, and

    Second, defendant was thereby negligent, and

    Third, as a direct result of such negligence plaintiff sustained damage."

2. *See* Annot., 40 A.L.R.3rd 515 (1971).

3. *Daugherty v. North Kansas City Memorial Hospital*, 570 S.W.2d 795 (Mo.App.1978) (failure to follow M. D.'s orders by not moving ice collar); *Howard v. Research Hospital and Medical Center, Inc.*, 563 S.W.2d 111 (Mo.App. 1978) (failure to properly restrain patient).

close watch on that patient was more akin to a nonmedical, routine duty. There was no dispute about the women's behavior; she was known to be suicidal and had attempted to end her life on the car ride to the hospital. Observing her closely could not have made her condition worse, unlike the present situation.

Appellant next contends that the trial court erred in sustaining respondent's motion for a directed verdict on appellant's claim for punitive damages. We need not address the merits of this claim because the jury found for respondent on appellant's claim for actual damages. There can be no recovery for punitive damages absent an award of actual damages. *United Telephone Company of Missouri v. Horn*, 610 S.W.2d 701, 706 (Mo.App.1980).

Respondent's contention that the trial court erred in not directing a verdict in its favor is rendered moot by the jury verdict in this case and will therefore not be considered by this court.

The judgment of the trial court is affirmed.

STEWART, P. J., and STEPHAN, J., concur.