Elaine ROBBINS, Plaintiff-Respondent,

v.

JEWISH HOSPITAL OF ST. LOUIS, Defendant-Appellant.

No. 46193.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 13, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 17, 1984.

Application to Transfer Denied Feb. 15, 1984.

Theodore H. Hoffman, St. Louis, for defendant-appellant.

Parks G. Carpenter, St. Louis, for plaintiff-respondent.

GAERTNER, Presiding Judge.

Elaine Robbins instituted this negligence action to recover damages from defendant Jewish Hospital for injuries she sustained while a patient at the hospital. Following a jury verdict in favor of plaintiff, Jewish Hospital filed a motion for judgment n.o.v. in accordance with its motions for directed verdict or, in the alternative, for a new trial. The trial court denied the motion for judgment n.o.v., but granted the motion for a new trial for the following reasons: 1) the court erroneously admitted evidence of a slip by plaintiff which varied from plaintiff's pleading that she fell out of bed; 2) the court erred in its instruction to the jury which charged negligence in failing to raise both side rails of plaintiff's bed because the instruction departed from the plaintiff's pleadings; and 3) the court erred in giving an instruction defining "ordinary" rather than "professional" negligence. Plaintiff appeals from the order granting a new trial and Jewish Hospital cross-appeals from the denial of its motion for judgment n.o.v. The two appeals are consolidated.

The facts are uncomplicated. Viewing the evidence from the standpoint most favorable to plaintiff, *Mrad v. Missouri Edison Co.*, 649 S.W.2d 936, 937 (Mo.App.1983),

the jury could have found that plaintiff entered Jewish hospital on November 13, 1977, after an over-ingestion of drugs. Approximately 36 hours after her admission, following her transfer from the intensive care unit to an acute care unit, plaintiff suffered an accident resulting in a fracture to her left hip. Plaintiff remembers nothing from before her admission to the hospital until the day after her injury. Nurse Rutlege, the nurse on duty in the acute care unit at the time of the accident, chronicled the night's events. After coming on duty, she had familiarized herself with the patients' charts. Plaintiff's chart revealed that she had suffered, unrelated to her drug overdose, prior brain damage resulting in lameness and muscle spasms in her left leg for which she required a leg brace, weakness on her left side and arm, and impaired vision. Nurse Rutlege then personally checked on plaintiff, noting her responses, degree of alertness, grip, and mobility. She observed plaintiff use the bed pan placed on a bedside chair. Her testimony was equivocal about whether she gave the plaintiff physical assistance getting in and out of bed. However, she was positive she had directed plaintiff to signal for assistance when she wanted to use the bed pan. Nurse Rutlege testified that "I didn't want her to get out without assistance . . . I felt it was necessary that somebody be present" in order to minimize the risk of injury. The nurse further stated that one way to prevent patients from getting out of bed without assistance would be to leave the bed rails in a raised position. Nevertheless, she left the bed rail on the side of the bed closest to the bed pan in the down position and continued on her rounds. She returned to plaintiff's room at 4:00 a.m. and discovered that plaintiff's I.V. had become disconnected. She reconnected it. She checked on plaintiff again at approximately 5:00 a.m. and found plaintiff sitting on the edge of the bed on the side with the lowered rail. Plaintiff had gotten out of bed unassisted and involuntarily urinated on the floor. In response to the nurse's query whether she had fallen, plaintiff had replied, "no, honey, I slipped." Nurse Rutlege could not recall

if plaintiff said she slipped getting out of bed, after she got out, or while getting back in bed. Plaintiff's gown was dry; only her feet were wet from the urine. When asked if injured, plaintiff said no. Although plaintiff complained of a bruising sensation about her left leg, the nurse detected no evidence of discoloration, bruising, or swelling. She made no entry on plaintiff's chart of the episode until noon the following day when she learned that plaintiff, because of continuing complaints of pain, had been x-rayed, and that a fractured hip had been discovered. The nurse then made an addendum in the plaintiff's record of the previous night's occurrence. Plaintiff subsequently initiated her lawsuit to recover damages for the injuries she sustained.

██ On its cross-appeal from the denial of its motion for judgment n.o.v., defendant contends plaintiff failed to make a submissible case. The granting of defendant's motion for new trial erased the judgment against defendant; therefore, neither a final appealable judgment exists nor is defendant an aggrieved party with standing to appeal. We must dismiss its cross-appeal. § 512.020, RSMo 1978; *Mrad v. Missouri Edison Co.,* 649 S.W.2d at 941. Nevertheless, where a plaintiff appeals asserting error by the trial court, the defendant may contest the issue of submissibility of plaintiff's case, an issue inherent in every appeal. *Lilly v. Boswell,* 362 Mo. 444, 242 S.W.2d 73, 77 (1951); *R.H. Macy & Co. v. Bell,* 531 S.W.2d 58, 61 (Mo.App.1975).

Defendant contends plaintiff failed to make a submissible case because she presented evidence that she was injured as a result of "slipping," a fatal variance from her pleading of "falling from bed;" she failed to adduce expert testimony showing a deviation from the appropriate standard of professional care; and she failed to show a causal connection between the negligence pleaded, i.e. leaving the bed rail down, and her injury.

██ First, the issue of causation. It is, of course, axiomatic that plaintiff must establish a causal connection between the

negligence charged or submitted and the loss or injury sustained. *Branstetter v. Gerdeman,* 364 Mo. 1230, 274 S.W.2d 240, 245 (1955). The usual test of causal connection between a defendant's negligence and a plaintiff's injuries is whether the facts in evidence show that the injuries would not have been sustained in the absence of such negligence. *Housden v. E.I. DuPont De Nemours & Co.,* 321 S.W.2d 430, 433 (Mo. 1959). Faced with a contention that a plaintiff failed to make a submissible case, we must view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Hannah v. Mallinckrodt, Inc.,* 633 S.W.2d 723 (Mo. banc 1982).

Defendant argues that the absence of expert medical testimony based upon reasonable medical certainty that plaintiff's fracture was caused by a slip or a fall is fatal. However, Dr. Robert Rainey testified for plaintiff by deposition. He opined that plaintiff's continued complaints of pain in the left hip area were related to the incident which occurred in the hospital and that the injuries resulting from the accident during her hospitalization were permanent. Defendant's medical expert conceded that the injury sustained by plaintiff could have been caused by either a slip or a fall. This testimony was elicited, without objection, in response to questions which did not hypothesize the facts in evidence. Moreover, the establishment without medical testimony of a causal relationship between an accident and the injury sustained was explored by this court in *Pruneau v. Smiljanich,* 585 S.W.2d 252, 255 (Mo.App.1979):

> The element of causation may be established in the absence of medical testimony, if the injury suffered may be categorized as one of "sudden onset." This latter term has been interpreted as embracing those "cases where the physical disability develops coincidentally with the negligent act, such as broken bones . . ., immediate, continuing back pain . . ., or an obvious wound." *DeMoulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.App.1969).

In *Pruneau* a plaintiff's subjective complaints of headaches, backaches, visual impairment and nausea which appeared three or four days after the collision were within the "sudden onset" category justifying the submission of the case to a jury despite the absence of expert testimony regarding causal connection. Here, although plaintiff was unable to recall any of the events during the two days immediately following her admission to the hospital, ample evidence existed for a jury of laymen to infer a causal relationship between the incident at the hospital and plaintiff's fractured hip. Although plaintiff had suffered a pelvic injury to the groin area six months before in an unrelated accident, she had returned to work as a nurse at a rehabilitation center full time. She had been at Jewish Hospital, first in an intensive care unit and later in an acute care unit for 1½ days with no reported complaints of hip or leg pains. Her first recollection of being at Jewish Hospital was the day after her injury, when she told her husband she had pain in her left hip. Nurse Rutlege reported that plaintiff complained of a "bruising sensation" of the left leg at the time she found her on the side of the bed at 5:00 a.m. Plaintiff's pain was severe enough to warrant x-rays before noon the same day. The x-rays disclosed a displaced left trochanteric fracture requiring four weeks of hospitalization, bed rest, and an additional 1½ months delay before returning to work on a part-time basis. Nurse Rutlege testified the only occasion of a slip or fall by plaintiff occurred when plaintiff unassisted, attempted to use the bed pan on a chair.

These facts, and the inferences which they create, clearly bring this case within the "sudden onset" rule, thus dispensing with any necessity of a hypothetical question to elicit an expert opinion that the accident described caused the ensuing injury. That plaintiff would have avoided injury by a slip or a fall if she had been prevented from getting out of bed without assistance by raising the bed rail requires neither surmise nor conjecture but, instead, is a legitimate inference from all the evi-

dence. Defendant's argument is without merit.

■■■ Both the defendant's contention that plaintiff failed to make a submissible case because of the absence of expert medical testimony to show a deviation from the standard of professional care and the trial court's grant of a new trial for failure to define "professional" rather than "ordinary" negligence are inseparably entwined and shall be considered together. Both raise issues of law. While we are required to give deference to an exercise of discretion by the trial court, there is no discretion when the question involves a matter of law. *Spalding v. Monat*, 650 S.W.2d 629, 631 (Mo.App.1981). Not every case seeking to recover damages for injury sustained while undergoing medical treatment or hospital care requires expert medical testimony in order to prove negligence. *See* Annot., 40 A.L.R.3d 515 (1971). Where the conduct in question involves unique knowledge, skill or ability peculiar to those educated and trained in a particular profession, expert testimony is essential for the guidance of lay jurors in determining whether such conduct constituted a departure from the generally accepted standard of care imposed upon those engaged in such profession. However,

> there [is] [no] peculiar need for expert testimony on any issue the resolution of which would not extend the jury beyond the range of ordinary lay knowledge and experience . . . there must be, in the nature of things, many instances where the facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skillful in the particular science to show unskillful and negligent treatment.

*Daugherty v. North Kansas City Memorial Hosp.*, 570 S.W.2d 795, 797 (Mo.App.1978).

■■■ *Daugherty* involved a situation where a nurse failed to follow a physician's instructions regarding patient care. The decision by the physician to give instructions on the care the patient required was "professional" conduct, wherein expertise was exercised. The nurse's following such instructions was purely ministerial and routine, requiring only a common sense judgment of lay jurors to recognize a failure to exercise that degree of care owed by the nurse to the patient. Here, Nurse Rutlege exercised the skill and ability in which she was trained and experienced when she made the decision that plaintiff should not be permitted to get out of bed without assistance. However, it takes no special knowledge, education or experience to recognize that the danger she sought to avoid might well occur if she did not in some manner, such as raising the bed rail, restrain an already crippled patient in the process of recovering from a drug overdose. Paraphrasing the language in the Supreme Court in *Stallman v. Robinson*, 364 Mo. 275, 260 S.W.2d 743, 745 (1953), having accepted plaintiff as a patient, the defendant owed her the specific duty of exercising reasonable care to protect her from injuring herself. Defendant's duty in this regard was proportionate to her needs, that is, such reasonable care and attention as her known condition required.

In *Howard v. Research Hospital and Medical Center, Inc.*, 563 S.W.2d 111 (Mo. App.1978), a nurse, without instructions from a physician, determined a patient needed assistance to go to the bathroom. She applied a "posey" restraint, but so loosely the patient got out of it, fell, and suffered a fractured hip. The court held this to be ordinary negligence, not professional negligence requiring expert testimony as to the standard of care in the profession. Quoting from *Steele v. Woods*, 327 S.W.2d 187, 189 (Mo.1959) *Howard* at 113 held, "[W]here the conduct in question does not involve skill or technique in an area where knowledge of such is a peculiar possession of the profession and does not involve a matter which any layman (or court) could know, then such 'professional' testimony is not necessary."[1]

---

1. A review of cases from other jurisdictions set forth in *Howard* at 113, is particularly illuminating on the issue here presented:

■■■ Defendant attempts to escape from *Howard*'s "common sense" rule by pointing to its evidence that freedom from restraint was intended psychologically to restore plaintiff's confidence in her ability to care for herself. Defendant cites *M.W. v. Jewish Hospital Association of St. Louis,* 637 S.W.2d 74 (Mo.App.1982) a decision issued from this Court just days before the trial of the instant case. We held permitting a patient to mingle with other patients was a professional decision in the care and treatment of a schizophrenic teenage female who was subjected to sexual mistreatment by male patients. We recognized the distinction between "medical judgment" and "non-medical, administrative, ministerial or routine care." *Id.* at 76. Because the freedom from restriction was a deliberate, calculated risk in the treatment of schizophrenic patients for the purpose of restoring their self-confidence, we held the use of MAI 11.06, the medical malpractice definition of negligence, was proper. *Id.* Attempting to bring this case within the "medical judgment" rule pronounced in *M.W. v. Jewish Hospital,* the hospital here elicited testimony that bed rails were left down so that patients about to be discharged may "assume as much responsibility and independence as they have at home." Defendant misconstrues both the import and the impact of such testimony. While that might explain leaving bed rails down in some instances, it is irrelevant here where Nurse Rutlege left the bed rail down because plaintiff "preferred the one rail down." Moreover, the physicians' instructions to the nurses were silent concerning the bed rails and treatment to restore "responsibility and independence." On the contrary, the nurse's instructions were that plaintiff should be "watched closely." Such evidence amply supported plaintiff's theory of her case that the only medical judgment was that plaintiff should not be permitted to get out of bed without assistance. Once this judgment was made, the implementation of the decision, by bed rails or other form of restraint, is purely ministerial and routine. Defendant, by eliciting testimony that there might have been another reason for leaving the bed rail down, may not compel plaintiff to abandon her own theory of the case. Plaintiff was not required to introduce expert medical testimony regarding the professional standard of care and, thus, the trial court did not err in giving MAI 11.07, defining negligence and ordinary care, rather than MAI 11.06, defining professional negligence.

Finally, defendant contends plaintiff failed to make a submissible case because of a variance between the allegation of the petition that she fell from bed and the evidence that she slipped. Conversely,

More appropriate to the facts of this case are these cases following: *Norris v. Rowan Memorial Hospital, Inc.,* 21 N.C.App. 623, 205 S.E.2d 345 (1974), where plaintiff alleged that hospital employees were negligent in failing to raise side rails on her bed, from which she fell, and failed to give her proper attention. The court reversed the direction of the verdict for defendant and said, page 348[1–3], "Where, as here, the alleged breach of duty did not involve the rendering or failure to render professional nursing or medical services requiring special skills, expert testimony on behalf of the plaintiff as to the standard of due care prevailing among hospitals in like situations is not necessary to develop a case of negligence for the jury"; *Morningside Hospital & Training School for Nurses v. Pennington,* 189 Okl. 170, 114 P.2d 943 (1941), where the court said that the question of what was the proper method of restraint (where deceased fell out of bed) was for the jury; *McCoy v. Wesley Hospital and Nurse Training School,* 188 Kan. 325, 362 P.2d 841, 851[7] (1961), where deceased fell out of bed after surgery and while under sedation and anesthetics, the court saying, "It has been held a hospital must exercise toward a patient such reasonable care as his known condition may require, and that degree of care is in proportion to his known physical and mental ailments"; *D'Antoni v. Sara Mayo Hospital,* 144 So.2d 643 (La.App. 1962) (the raising of bed side rails is a mechanical act which any unskilled person can perform); *Ford v. Vanderbilt University,* 40 Tenn.App. 87, 289 S.W.2d 210, 213 (1955). Here, a lay juror would know whether a properly placed "Posey" would have prevented respondent's getting out of bed, and whether more supervision than was given would have prevented the fall. Expert testimony on those subjects was not necessary, and the trial court did not err in overruling appellant's motion for directed verdict.

plaintiff charges the trial court with error in basing the granting of a new trial on the ground that the admission of evidence of a slip was improper as being a departure from the pleadings. The issues are obviously so interrelated that they may be considered together. Plaintiff's petition, amended by interlineation, alleged she was injured in a fall from bed caused by defendant's negligence, inter alia, in failing to maintain the bed rails in a secured, upright condition. Prior to the commencement of the trial, defendant's counsel advised the trial judge of what he claimed was a discrepancy between the pleaded fall and the testimony which he anticipated regarding a slip. By way of motion in limine he requested the court to exclude all testimony regarding a slip. The trial judge, although indicating his opinion that the claimed discrepancy did not seem material, quite appropriately did not make a definitive ruling. The court assured counsel he would make plaintiff's attorney "stick to his pleadings" if objections were made in the courtroom in a "questioning situation" rather than in chambers. Defendant's counsel obviously understood the requirement of making such timely objections as he replied, "I will make such a nuisance of myself if I must." However, no objection of any kind was made when the evidence relating to a slip was introduced.

Even if the trial court had ruled, either sustaining or denying defendant's motion in limine, it would nevertheless have remained necessary for counsel to object at the time the objectionable evidence was offered. *Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App.1982). A ruling by the trial court on a motion in limine regarding the admission or suppression of potential evidence is interlocutory in nature. The trial court cannot foresee the circumstances under which the matter may be presented during trial, or how trial developments preceding the attempt to introduce the questioned evidence may affect its admissibility. For these reasons, an objection or an offer of proof must be made so that the trial court has the opportunity to consider such circumstances and developments and thus be enabled to make a reasoned and fully-advised decision. Quoting from *State v. Riggs,* 586 S.W.2d 447, 449 (Mo.App.1979), this court has defined a motion in limine as:

> [N]othing more or less than a highfalutin motion to suppress designated testimony or evidence. However, sustention of such a motion does not per se work as a permanent damnation of the evidence sought to be suppressed. Neither does sustention prevent the trial court from later changing its mind. The pre-trial ruling is interlocutory only. *Additional information or trial-produced evidence may prompt the trial court to alter its pre trial ruling by admitting the previously objected-to testimony.*

*State ex rel. Westfall v. Gerhard,* 642 S.W.2d 679, 681 (Mo.App.1982). Accordingly, while a motion in limine has the salutory purpose of pointing out to the court and to opposing counsel anticipated evidence which may be objectionable, and perhaps even prejudicial enough to warrant the declaration of a mistrial, a pre-trial ruling thereon is not definitive. Such a ruling presents nothing for appellate review unless preserved by timely objection or offer of proof. Failure to make such a timely objection constitutes consent to the admission of the evidence. This is especially so under the circumstances of this case where defendant's counsel, although specifically admonished by the trial judge to call his attention to any evidence which counsel thought to be beyond the scope of the pleadings, failed to do so.

Not having objected to the evidence that plaintiff's injury was caused by a slip, defendant is precluded from later asserting that such evidence was a departure from the pleading of a fall. Rule 55.33(b) provides in part:

> (b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be

necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Thus, even if the evidence that plaintiff slipped was a variance from the allegation that she fell, the petition must be considered to have been amended to conform to the evidence by operation of law. Moreover, under the evidence in this case, we are not persuaded that a material variance existed between the pleading and the proof. Defendant's medical testimony established that plaintiff's injury could have resulted from either a slip or a fall. The evidence regarding the actions of plaintiff was inconclusive; Nurse Rutlege was unable to recall if plaintiff stated she slipped getting out of bed, after she was out or getting back in the bed. A variance between the pleading and proof regarding what the person injured was doing is seldom a material or fatal variance, as this constitutes no part of the wrong complained of. 65(A) C.J.S. "Negligence" § 202 (1966). Evidence that a plaintiff was walking on the sidewalk when struck by a bus was held to be an immaterial variance from a pleading alleging she was standing on the sidewalk in *Murray v. St. Louis Public Service Co.*, 201 S.W.2d 775, 781 (Mo.App.1947). The same is true here.

■ The gist of plaintiff's case was the failure of defendant to carry out its recognized duty to prevent plaintiff from getting out of bed without assistance. Once this duty had been breached, it mattered little whether she was injured by falling out of bed or slipping on the floor. Defendant was in no way prejudiced, misled, or surprised. While Missouri, despite its broadened discovery rules, has not yet seen fit to adopt the "notice pleading" of federal procedure, we are not about to revert to the hypertechnical intricacies of common law pleading.

Defendant's contentions regarding instructional error are predicated upon the same issues addressed above. Further discussion of these issues is unnecessary.

Accordingly, defendant's cross appeal is dismissed. The order of the trial court sustaining defendant's motion for new trial is reversed. The cause is remanded to the trial court with directions to enter judgment in favor of plaintiff in accordance with the verdict of the jury.

SMITH and STEPHAN, JJ., concur.