**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 12-1367**

———————————

MARGARET LITTLEPAIGE, Personal representative of the Estate
of Alfred Littlepaige, deceased,

        Plaintiff – Appellant,

    v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

———————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Greenville.  Malcolm J. Howard,
Senior District Judge.  (5:10-cv-00571-H)

———————————

Argued:  May 14, 2013           Decided:  June 12, 2013

———————————

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

———————————

Affirmed by unpublished opinion.  Judge Agee wrote the majority
opinion, in which Judge Duncan joined.  Judge Davis wrote a
dissenting opinion.

———————————

**ARGUED**:  Peter Joseph Sarda, CREECH LAW FIRM, PA, Raleigh, North
Carolina, for Appellant.  Shailika K. Shah, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON
BRIEF**:  Thomas G. Walker, United States Attorney, Jennifer P.
May-Parker, W. Ellis Boyle, Assistant United States Attorneys,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,
for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

Margaret Littlepaige ("Mrs. Littlepaige") appeals the district court's dismissal of her Federal Tort Claims Act ("FTCA") complaint against the United States. The court concluded that Mrs. Littlepaige's complaint sounded in medical malpractice under North Carolina law, and was therefore barred in the absence of a state medical malpractice certification, which had not been filed. For the reasons discussed below, we affirm the judgment of the district court.

I.

In September 2007, Alfred Littlepaige ("Mr. Littlepaige"), a veteran of the Korean War and husband of Mrs. Littlepaige, was admitted to the Durham Veterans Administration ("VA") Medical Center ("VA Hospital") in Durham, North Carolina, suffering from advanced stages of dementia.[1] Mr. Littlepaige was placed on a "falls precaution," a procedure which the complaint describes as a period during which "the [VA Hospital] undertook to provide special care and observation to prevent [Mr. Littlepaige] from falling to the ground while hospitalized." (J.A. 3.)

---

[1] Because this appeal arises out of the grant of a motion to dismiss, we accept as true all well-pleaded facts and construe those facts in the light most favorable to Mrs. Littlepaige, the plaintiff and nonprevailing party. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

On September 21, 2007, hospital staff found Mr. Littlepaige lying on the floor beside his bed. After a cursory examination, VA Hospital attendants determined that Mr. Littlepaige was not injured. The next day, Mrs. Littlepaige found Mr. Littlepaige again lying on the floor, bruised and unable to stand. On September 25, four days after Mr. Littlepaige was first found on the floor, he was given an x-ray exam for an unrelated intestinal problem. In the course of reviewing the x-ray results, VA physicians discovered that Mr. Littlepaige had a fractured hip. Shortly thereafter, Mr. Littlepaige underwent surgery to correct the hip fracture.[2]

In 2009, Mrs. Littlepaige, on behalf of her late husband's estate, filed an administrative claim with the VA for damages resulting from the injuries Mr. Littlepaige allegedly suffered while a patient at the VA Hospital. The VA later denied Mrs. Littlepaige's administrative claim, and in 2010, she filed a complaint against the United States pursuant to the FTCA in the United States District Court for the Eastern District of North Carolina. In her complaint, Mrs. Littlepaige alleged that as a "result of the failure of [the VA Hospital] to properly attend

_____

[2] Mr. Littlepaige died sometime between September 2007, and the commencement of this litigation in December 2010. The record does not reflect his cause of death, but there is no allegation that the VA Hospital's alleged negligence contributed to Mr. Littlepaige's death.

4

to [Mr. Littlepaige, he] suffered the pain of a hip fracture, the pain of surgical repair for his broken hip, permanent loss of use of his leg and continued pain and suffering." (J.A. 3-4). Mrs. Littlepaige further alleged that "[f]alls by a patient under a falls precaution should not occur with the exercise of due care by Defendant [VA Hospital]." (J.A. 3). The complaint also included the allegation that "[a]s a direct and proximate result of the . . . [VA Hospital's] failure to diagnose the broken hip and because of [the VA Hospital's] failure to properly treat [Mr. Littlepaige, he] suffered pain at the hands of the [VA Hospital.]" (J.A. 4).

The government filed a motion to dismiss the complaint because no certification as required by Rule 9(j) of the North Carolina Rules of Civil Procedure was included in the pleadings.[3] Mrs. Littlepaige responded to the motion to dismiss, arguing that a Rule 9(j) certification is unnecessary because she pleads only ordinary negligence, not a claim for medical malpractice. In the alternative, Mrs. Littlepaige contended that even if she was raising a medical malpractice claim, her complaint falls

---

[3] In essence, Rule 9(j) requires that, prior to the filing of a medical malpractice complaint in North Carolina, a plaintiff must certify that an expert has reviewed the medical malpractice claim and is prepared to testify that the defendant did not meet the standard of care (i.e., that the medical malpractice claim has merit).

5

within an exception to Rule 9(j) for pleadings that "allege[] facts establishing negligence under the existing common-law doctrine of res ipsa loquitur." N.C. Gen. Stat. § 1A-1, Rule 9(j)(3).

The district court granted the government's motion to dismiss, finding that Mrs. Littlepaige's "claims about defendant's execution of its falls precaution plan and failure to properly diagnose his injuries is a medical malpractice action under North Carolina law." (J.A. 41). The court also held that "the exception for res ipsa loquitur does not apply here." (J.A. 42).

Mrs. Littlepaige noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.


II.

Mrs. Littlepaige argues on appeal that the district court erred in dismissing her FTCA complaint for two reasons: (1) her complaint sounded in ordinary negligence, thus obviating the need for a Rule 9(j) certification; and (2) in the alternative, her complaint adequately stated a claim for medical malpractice under the common law doctrine of res ipsa loquitur, thus falling into an exception to Rule 9(j). For the following reasons, we disagree with Mrs. Littlepaige and affirm the judgment of the district court.

6

A.

This Court reviews de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

B.

A plaintiff may recover against the United States only to the extent that it has expressly waived sovereign immunity. Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Congress waived the sovereign immunity of the United States for certain torts committed by federal employees when it enacted the FTCA in 1946. Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). However, the FTCA is a limited waiver of immunity, imposing tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and only to the extent that "a private person[ ] would be liable to the claimant in accordance

7

with the law of the place where the act or omission occurred," id. § 1346(b)(1). In other words, a claimant "has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances." Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991). Thus, the substantive law of each state establishes the cause of action. Kerns, 585 F.3d at 194; Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009). In the case at bar, that substantive law is the state law of North Carolina.

Pursuant to Rule 9(j),

[a]ny complaint alleging medical malpractice by a health care provider . . . shall be dismissed unless: (1) [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness . . . and who is willing to testify that the medical care did not comply with the applicable standard of care.

N.C. Gen. Stat. § 1A-1, Rule 9(j). As the Supreme Court of North Carolina has explained,

[t]he legislature specifically drafted Rule 9(j) to govern the initiation of medical malpractice actions and to require physician review as a condition for filing the action. The legislature's intent was to provide a more specialized and stringent procedure for plaintiffs in medical malpractice claims through Rule 9(j)'s requirement of expert certification prior to the filing of a complaint.

Thigpen v. Ngo, 558 S.E.2d 162, 166 (N.C. 2002).

8

In an action under the FTCA, "[w]e must rule as the North Carolina courts would, treating decisions of the Supreme Court of North Carolina as binding, and departing from an intermediate court's fully reasoned holding as to state law only if convinced that the state's highest court would not follow that holding." Iodice v. United States, 289 F.3d 270, 275 (4th Cir. 2002) (internal quotation marks and alteration omitted). As to Rule 9(j), the Supreme Court of North Carolina has stated that "medical malpractice complaints [in North Carolina] have a distinct requirement of expert certification." Thigpen, 558 S.E.2d at 165 (emphasis added). The district courts in this circuit are also unanimous that a Rule 9(j) certification is required to sustain a medical malpractice action under the FTCA in North Carolina. See, e.g., Lauer v. United States, No. 1:12cv41, 2013 WL 566124, at *4 (W.D.N.C. Feb 13, 2013); Baker v. United States, No. 5:11-CT-3070-D, 2013 WL 211254, at *5 (E.D.N.C. Jan. 18, 2013); Hall v. United States, No. 5:10-CT-3220-BO, 2013 WL 163639, at *3 (E.D.N.C. Jan. 15, 2013); Muhammad v. United States, No. 5:11-CT-3126-FL, 2012 WL 3957473, at *3 (E.D.N.C. Sept. 10, 2012). It thus appears that, where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action.

We turn first, therefore, to Mrs. Littlepaige's contention that her complaint sounded in ordinary negligence, thus avoiding

9

the Rule 9(j) expert certification requirement. The North Carolina Court of Appeals has provided a helpful (if not precedential) distinction between ordinary negligence and medical malpractice under North Carolina law in the context of a medical malpractice case.

> According to N.C. Gen. Stat. § 90-21.11, "the term 'medical malpractice action' means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." When nurses make "medical decision[s] requiring clinical judgment and intellectual skill," they are providing professional services, and therefore the action against them must be certified per Rule 9(j). Sturgill v. Ashe Mem'l Hosp., Inc., 652 S.E.2d 302, 306 (N.C. Ct. App. 2007), rev. denied, 658 S.E.2d 662 (N.C. 2008). Corporate negligence actions brought against hospitals which pertain to clinical patient care sound in medical malpractice, while such actions which arise out of policy, management, or administrative decisions sound in ordinary negligence. Estate of Waters v. Jarman, 547 S.E.2d 142, 145 (N.C. Ct. App. 2001). Examples of policy, management, or administrative decisions include "granting or continuing hospital privileges, failing to monitor or oversee performance of the physicians, credentialing, and failing to follow hospital policies[.]" Id. "In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that 'pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim.'" Sturgill, 652 S.E.2d at 305 (quoting Anderson v. Assimos, 572 S.E.2d 101, 102 (N.C. 2002)).

Deal v. Frye Reg'l Med. Ctr., Inc., 691 S.E.2d 132 (table), 2010 WL 522727, at *2 (N.C. Ct. App. Feb. 16, 2010) (alterations in original).

10

i.

Applying these standards to the case at bar, it is clear that Mrs. Littlepaige's complaint sounds in medical malpractice, not ordinary negligence. Mrs. Littlepaige's complaint alleges, inter alia,

- "From September 18 through September 25, 2007, [Mr. Littlepaige] was under a "falls precaution" during which the defendant undertook to provide special care and observation to prevent the defendant from falling to the ground while hospitalized." (J.A. 3 (emphasis added).)

- "Falls by a patient under a falls precaution should not occur with the exercise of due care by the Defendant[.]" (J.A. 3.)

- "As a direct and proximate result of [the VA Hospital's] failure to provide adequate supervision, because of [the VA Hospital's] failure to diagnose the broken hip and because of the [VA Hospital's] failure to properly treat [Mr. Littlepaige, he] suffered pain at the hands of [the VA Hospital]." (J.A. 4 (emphasis added).)

The plain language of the complaint demonstrates that Mrs. Littlepaige's action is one for medical malpractice as that term is applied under North Carolina law. As recounted above, the North Carolina statute defines "medical malpractice action" as "[a] civil action for damages for personal injury or death

11

arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)a. The allegations in the complaint in this case fit squarely within that definition. The complaint describes the falls precaution as a "special duty" that can only arise as a consequence of the provision of professional medical services. The complaint alleges harm as a consequence of the "failure to diagnose" and "failure to treat" Mr. Littlepaige. In short, the complaint sought damages "arising out of the furnishing or failure to furnish professional services in the performance of . . . health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)a. It thus alleged medical malpractice, not ordinary negligence.

Furthermore, North Carolina law leaves no room for pleading in the alternative under the facts of this case. The facts alleged in the complaint are that the VA Hospital is a "health care provider," and that, as a result of its provision of "professional services" Mr. Littlepaige suffered injury. Even the most liberal construction of Mrs. Littlepaige's complaint cannot escape the ambit of Rule 9(j) because it plainly pleads a "medical malpractice action" under North Carolina law.

Our conclusion that Mrs. Littlepaige's complaint sounds in medical malpractice is consistent with Deal, a persuasive

12

opinion of the North Carolina Court of Appeals.[4]  In <u>Deal</u>, the court considered and rejected a claim virtually identical to that brought by Mrs. Littlepaige here.  The <u>Deal</u> plaintiff brought a claim that a hospital's failure to conduct a "Fall Risk Screen Assessment" resulted in injury.  <u>Deal</u>, 2010 WL 522727 at *1.  The plaintiff failed to file a Rule 9(j) certification, the complaint was dismissed, and the plaintiff argued on appeal that the case sounded in ordinary negligence only.  The North Carolina Court of Appeals rejected that contention, concluding that the fall risk screening process involved "the rendering of professional services" that required "clinical judgment and intellectual skill."  <u>Id.</u> at *4.  Accordingly, Rule 9(j) certification was required.

We see little to distinguish this case from <u>Deal</u>.  In determining whether the VA Hospital staff properly implemented

---

[4] Pursuant to North Carolina Rules of Appellate Procedure, citation to unpublished opinions of the North Carolina Court of Appeals is "disfavored," except where the "unpublished opinion has precedential value to a material issue in the case and . . . there is no published opinion that would serve as well."  N.C. R. App. P. 30(e)(3); <u>see also</u> <u>State ex rel. Moore Cnty. Bd. of Educ. v. Pelletier</u>, 606 S.E.2d 907, 909 (N.C. Ct. App. 2005) ("[C]itation to unpublished opinions is intended solely in those instances where the persuasive value of a case is manifestly superior to any published opinion.").  In this instance, the facts of <u>Deal</u> are so closely aligned with the facts of this case that we believe that "no published opinion . . . would serve as well" as <u>Deal</u> to support the proposition that Mrs. Littlepaige's complaint sounds in medical malpractice as a matter of law.  <u>See</u> N.C. R. App. P. 30(e)(3).

13

the falls precaution plan, the district court would undoubtedly have to resolve issues related to standards of medical care and the medical judgment of VA Hospital staff. This is not a premises liability action or an action challenging some non-medical aspect of hospital management. Cf. Estate of Waters v. Jarman, 547 S.E.2d 142, 145 (N.C. Ct. App. 2001) (holding that the reasonably prudent person standard of care applies in suits claiming negligence on the part of the hospital for administrative or management deficiencies). Rather, by the plain terms of the complaint, Mrs. Littlepaige challenged aspects of her husband's medical care. We conclude on these facts that the claim sounds in medical malpractice, the strictures of Rule 9(j) apply, and Mrs. Littlepaige failed to comply with that rule.

ii.

In the alternative, Mrs. Littlepaige argues that if her claim sounds in medical malpractice, she was not required to file a Rule 9(j) certification because she adequately pled under the common law doctrine of res ipsa loquitur. Accordingly, she argues that her claim falls into an exception to Rule 9(j). See N.C. Gen. Stat. § 1A-1, Rule 9(j)(3). Notwithstanding the fact that Mrs. Littlepaige did not mention the doctrine of res ipsa loquitur in her complaint in this case, we do not agree that the

14

facts alleged would give rise to application of that common law doctrine.

Res ipsa loquitur is an exception, not the rule, to medical malpractice cases in North Carolina.

> To warrant the submission of a malpractice case to the jury there must be proof of facts or circumstances which permit a legitimate inference of actionable negligence on the part of the physician, surgeon, or dentist. A showing of an injurious result is not enough. The doctrine of res ipsa loquitur cannot be relied on to supply deficiencies in the proof.

Boyd v. Kistler, 155 S.E.2d 208, 210 (N.C. 1967). The North Carolina Court of Appeals "has determined that in medical malpractice cases, the doctrine of res ipsa loquitur should be restrictively applied, because the average juror is unfit to determine whether a plaintiff's injury would rarely occur in the absence of negligence." Rowell v. Bowling, 678 S.E.2d 748, 751 (N.C. Ct. App. 2009) (quotation marks and alterations omitted).

> Previously, this Court has held that the doctrine of res ipsa loquitur applies in situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of a defendant. It is appropriate to use the doctrine when no proof of the cause of an injury is available, the instrument involved in the injury is in the exclusive control of a defendant, and the injury is of a type that would not normally occur in the absence of negligence.

Id. (internal quotation marks, quotation marks, citation, and alterations omitted). Accordingly, there is a strong

presumption under North Carolina law that, in the medical malpractice context, res ipsa loquitur will not apply.

> For the doctrine to apply in a medical malpractice claim, a plaintiff must allege facts from which a layperson could infer negligence by the defendant based on common knowledge and ordinary human experience. Diehl v. Koffer, 536 S.E.2d 359, 362 (N.C. Ct. App. 2000); see Bowlin [v. Duke Univ.], 423 S.E.2d [320,] 323 [(N.C. Ct. App. 1992)] (concluding that the doctrine of res ipsa loquitur was inappropriate where a layperson, without the benefit of expert testimony, would have no basis for concluding the physician was negligent in extracting bone marrow merely because the plaintiff's nerve was injured during the procedure); Grigg v. Lester, 401 S.E.2d 657, 659 (N.C. Ct. App. 1991) (holding that the doctrine of res ipsa loquitur did not apply in a case involving a tear in the plaintiff's uterus during a caesarean section because a layperson would not be able to determine that the force exerted by the physician during the procedure was improper or excessive).

Smith v. Axelbank, 730 S.E.2d 840, 843 (N.C. Ct. App. 2012). North Carolina courts have thus articulated a bright-line rule that a malpractice claim may not be brought on a theory of res ipsa loquitur unless the facts alleged are such that "the negligence complained of must be of the nature that a jury—through common knowledge and experience—could infer." Diehl v. Koffer, 536 S.E.2d 359, 362 (N.C. Ct. App. 2000).

We have reviewed the complaint and conclude that the facts alleged, even when construed liberally, are not such that a layperson could infer negligence on the part of the VA Hospital based on common knowledge. Mrs. Littlepaige alleged that Mr.

16

Littlepaige was placed on a falls precaution, was twice found on the floor, and some days later an injury was diagnosed. On the allegations in the complaint, Mr. Littlepaige could have been injured prior to his admission to the VA Hospital, or his injuries could have come about notwithstanding the exercise of due care by VA Hospital staff. While Mrs. Littlepaige need not eliminate every cause, other than the VA Hospital's negligence, for Mr. Littlepaige's injuries, the universe of uncertainties in this case is so vast as to defeat the inference of negligence necessary to advance a claim under the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u>. We therefore conclude that Mrs. Littlepaige has not adequately pled <u>res</u> <u>ipsa</u> <u>loquitur</u>, and thus the exception to Rule 9(j) does not apply. Because a private person under like circumstances would not be liable for medical malpractice under North Carolina law, the district court did not err in dismissing Mrs. Littlepaige's FTCA complaint.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

17

DAVIS, Circuit Judge, dissenting:

Because, in one fell swoop, my friends in the majority manage to misapply both federal procedural law and North Carolina substantive law, I respectfully dissent.

"[R]eading the complaint 'liberally in favor of the plaintiff,'" Sciolino v. City of Newport News, Va., 480 F.3d 642, 651 (4th Cir. 2007) (quoting Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (citing, inter alia, Fed. R. Civ. P. 8)), Mrs. Littlepaige states a claim for ordinary negligence. She alleges that her husband was "under the exclusive care of [the VA Hospital]," the VA Hospital failed to "observe and monitor [him]," her husband fell from his bed, and he "suffered a broken hip and bruises and contusions." J.A. 2–3. "[A] jury [is] fully capable without aid of expert opinion to apply the standard of the reasonably prudent man" to any evidence in support of these allegations. Norris v. Rowan Mem'l Hosp., Inc., 205 S.E.2d 345, 348 (N.C. Ct. App. 1974). Indeed, such assertions are quite similar to claims of ordinary negligence that arise out of a hospital's decision not "to offer a cane to a patient who has trouble walking," Horsley v. Halifax Reg'l Med. Ctr., Inc., 725 S.E.2d 420, 422 (N.C. Ct. App. 2012); a hospital's alleged failure "to raise the bed rails on [a patient's] bed" or "instruct her to use the bedside call button to obtain

18

assistance in going to the bathroom," Norris, 205 S.E.2d at 348; or a nursing home's alleged failure to "observ[e] and supervis[e] . . . [a resident] . . . smok[ing] in [a] designated smoking area" to prevent her from burning herself, Taylor v. Vencor, Inc., 525 S.E.2d 201, 203 (N.C. Ct. App. 2000). In short, the allegations in the complaint quoted in this paragraph did not arise "out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider," where "professional services" means "an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor [or] skill involved is predominantly mental or intellectual, rather than physical or manual." Lewis v. Setty, 503 S.E.2d 673, 674 (N.C.App. 1998) (emphasis, citations, and internal quotations omitted).[1]

---

[1] In Lewis, the court held that damages claims based on the negligent movement of a patient from an examination table to a wheelchair in a physician's office did not sound in medical malpractice. The court explained its holding as follows, in part:

> In this case, the removal of the plaintiff from the examination table to the wheelchair did not involve an occupation involving specialized knowledge or skill, as it was predominately a physical or manual activity. It thus follows that the alleged negligent acts of the defendant do not fall into the realm of professional medical services. Any negligence which may have

(Continued)

That the pleading _also_ asserts facts giving rise to a medical malpractice claim does not warrant dismissal of the entire complaint for failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure, which, under the fulsome progeny of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), governs pleading in this federal action,[2] permits a party to "set out 2 or more statements of a claim," and "as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d). Moreover, "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and "[a]n overly restrictive reading of a complaint is inconsistent with th[is] mandate," Starks v.

---

occurred when the defendant and Ms. Norris attempted to move the plaintiff from the examination table back to his wheelchair falls squarely within the parameters of ordinary negligence. _See_ Angela Holder, Medical Malpractice Law 175 (1975) (actions involving falls from beds or examining tables, equipment failures, or other types of accidents in a doctor's office differ from medical malpractice actions because they do not involve negligent treatment).

Lewis, 503 S.E.2d at 674. This reasoning from a reported, precedential opinion of the North Carolina intermediate appellate court should count for more than Deal v. Frye Reg'l Med. Ctr., Inc., 691 S.E.2d 132 (table), 2010 WL 522727 (N.C. Ct. App. Feb. 16, 2010), on which the majority inexplicably relies.

[2] Thus, the majority's assertion that "North Carolina law leaves no room for pleading in the alternative under the facts of this case," _ante_, at 12, misses the mark by a wide margin.

20

<u>Perloff Bros., Inc.</u>, 760 F.2d 52, 55 (3d Cir. 1985). Because the complaint in this case can be construed (indeed, it is impossible to construe it any other way) to allege a claim of ordinary negligence, we should reverse the district court's order dismissing the complaint and remand this case for further proceedings.