ILENE NORRIS, Administratrix of the Estate of MAUDE N. McGHEE
v. ROWAN MEMORIAL HOSPITAL, INC.

No. 7419SC194

(Filed 5 June 1974)

Hospitals § 3— injury to patient in hospital — negligence of hospital —
sufficiency of evidence

In an action to recover damages for personal injury sustained by
plaintiff's intestate when she fell and fractured her hip while a pa-
tient in defendant hospital, the trial court erred in granting defend-
ant's motion for a directed verdict where the evidence was sufficient
to warrant a jury finding, first, that defendant's employees were
negligent in failing to raise the bed rails on plaintiff's intestate's bed
and in failing to instruct her to use the bedside call button to obtain
assistance in going to the bathroom, and, second, that such negligence
was a proximate cause of her injury.

APPEAL by plaintiff from *Exum, Judge,* 15 October 1973
Session of Superior Court held in ROWAN County.

Civil action to recover damages for personal injuries re-
ceived by Mrs. Maude McGhee on 31 March 1971 when she
fell and fractured her hip while a patient in defendant hospital.
In her complaint Mrs. McGhee alleged that the hospital em-
ployees were negligent in failing to raise the side rails on her
bed in violation of the hospital safety rules and in failing to give
her proper attention, and that such negligence was the proximate
cause of her injuries. Prior to the trial Mrs. McGhee died of
causes unrelated to her fall, and her administratrix was substi-
tuted as party plaintiff.

Plaintiff's evidence disclosed the following: At about 2:30
o'clock on the afternoon of 30 March 1971, Mrs. Maude McGhee, a
lady then 75 years of age, was admitted under direction of her
physician as a patient to defendant hospital for the purpose of
having a "workup" or diagnosis of an undetermined anemia. At
the time, she was just getting over viral pneumonia. She walked
into the hospital, accompanied by her daughter, and was as-
signed to a semi-private room with another patient. On her
doctor's orders at about 4:30 p.m. she was administered castor
oil and between 9:30 and 10:30 p.m. was given a sleeping pill.
Her daughter remained with her until about 11:00 p.m., at
which time Mrs. McGhee was becoming drowsy and her daugh-
ter left. The hospital bed in which Mrs. McGhee was placed was
a hospital "hi-low" bed, which could be raised or lowered as

care of the patient might require and which was equipped with bed rails which could be raised or lowered. When Mrs. McGhee's daughter left, the bed was in the low position, "probably 24 or 25 inches off the floor, about the height of an ordinary bed," and the bed rails were in the lowered position. During the night, Mrs. McGhee got out of bed for the purpose of going to the bathroom, and in so doing, fell, fracturing her hip. In her deposition, taken 17 January 1972 and which was read to the jury, she testified:

"During the first night at the hospital I got up. I just slid off the side of the bed. I was thinking . . . I was asleep, and I was thinking I was at home. I just, you know, slid off the side of the bed and stood up. When I stood up everything went round and round, and I just passed out. I remember hollering when I fell. I hollered after, or about the time I fell, and about that time the nurses got to me, and that's the last thing I remember. . . .

"No one had told me not to get out of the bed. They didn't tell me to ring the buzzer if I wanted to go to the bathroom. They didn't tell me that a bedpan would be brought to me if I wanted it. I don't remember taking any steps before I fell, I just remember that I was just drunk, that I was just going round and round. If I made a step I don't know it."

On cross-examination, Mrs. McGhee testified:

"Before I went to the hospital I was able to walk. I walked into the hospital and could have needed help to get into bed. Of course, the nurses and my daughter were up there with me too. I had been accustomed to getting out of bed and going to the bathroom and things like that at home.

"No one at the hospital told me that I must not go to the bathroom by myself. I didn't have any instructions that I should remain in bed that night. The doctor did not order me to stay in bed that night, but after you take about a pint of castor oil, you don't feel like . . . you can't stay in bed. When I got out of bed I became dizzy. I was able to get out of bed, I put my feet off on the floor, you know, just like you, just like anybody would slide out, and stood up. After I stood up I became dizzy. I did not walk."

Plaintiff introduced in evidence as an exhibit a copy of a bulletin dated 4 October 1965 issued by defendant hospital for distribution to "all nursing units," which bulletin, insofar as pertinent to the question presented by this appeal, was as follows.

"I. This bulletin is a guide to provide safe care and protection for Rowan Memorial Hospital patients; to prevent injury to aged, sedated, and disoriented patients; to conserve skilled time of nursing personnel; and to make full use of hospital equipment.

"II. The professional nurse will determine the condition of the patient for use of bed rails, and circumstances for use of HiLow bed in the 'Hi' position.

"A. Bed rails are to be in the up position day and night for patients who:

"1. Are irrational, comatose, or advanced age, or otherwise disorientated.

"2. Are sedated or having received an analgesic.

\*   \*   \*   \*   \*

"B. Bed rails are to be in the up position from 9:00 p.m. to 7:00 a.m. for patients who:

"1. Are over 60 years of age.

"2. Are described in 'A' above.

\*   \*   \*   \*   \*

"III. Patients over 60 years of age will be instructed to use bedside call light for assistance to bathroom between 9:00 p.m. and 7:00 a.m."

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict pursuant to Rule 50. The court allowed the motion, the judgment reciting that in the opinion of the court the plaintiff's evidence, construed in the light most favorable to the plaintiff, failed to make a case of actionable negligence on the part of the defendant "in that the evidence of the plaintiff fails to show any negligent act or omission which was a proximate cause of injury to the plaintiff's intestate."

From the judgment allowing defendant's motion for a directed verdict, plaintiff appealed.

*Burke & Donaldson by Arthur J. Donaldson for plaintiff appellant.*

*Kluttz & Hamlin by Lewis P. Hamlin, Jr. and Richard R. Reamer for defendant appellee.*

PARKER, Judge.

In our opinion, plaintiff's evidence, when considered in the light most favorable to the plaintiff, presented a case for the jury. Ever since the decision in *Rabon v. Hospital*, 269 N.C. 1, 152 S.E. 2d 485, in which the defendant in the present case was also the party defendant, there can be no question but that a hospital owes the duty to exercise due care for the safey of its patients and may be held liable for damages proximately caused by breach of that duty. Where, as here, the alleged breach of duty did not involve the rendering or failure to render professional nursing or medical services requiring special skills, expert testimony on behalf of the plaintiff as to the standard of due care prevailing among hospitals in like situations is not necessary to develop a case of negligence for the jury. Under the factual situation here presented the jury was fully capable without aid of expert opinion to apply the standard of the rearsonably prudent man.

In our opinion, the evidence here was sufficient to warrant a jury finding, first, that defendant's employees were negligent in failing to raise the bed rails on Mrs. McGhee's bed and in failing to instruct her to use the bedside call button to obtain assistance in going to the bathroom, and, second, that such negligence was a proximate cause of her injury. True, one purpose served by raising the bedside rails would have been to prevent the patient from rolling or falling from the bed, and there is no evidence that Mrs. McGhee fell from the bed. That, however, was not the only purpose which would have been served by raising the rails, and defendant's duty of due care did not end with merely assuring that its patients would not fall out of their beds. The presence of the rails in the raised position would have also served to arouse a patient in Mrs. McGhee's situation, who was made drowsy by a sedative, and alert her that she should ring for assistance if she needed to go to the bathroom. Without the small obstruction provided by the raised rails, it was all too easy for the patient, still half asleep from a sleeping pill administered by the hospital, to get out of the bed, attempt

In re Estate of Loftin

to stand without assistance, and then, dizzy from the sedative, tumble to the floor. The jury could find from the evidence here that this was exactly what happened to Mrs. McGhee. On her doctor's instructions the hospital employees had given her castor oil and a sleeping pill, a combination of dosage, which, so the jury could find, should have put a reasonably prudent person on notice that at some time during the night and while she was still under the effects of the pill she woulud need to go to the bathroom. Her attempt to do so unassisted led directly to her injury. On the evidence here the jury could legitimately find that her injury was a reasonably foreseeable consequence of the failure of defendant's employee to observe the very precautions set forth in defendant's own safety bulletin, which were clearly designed to protect against the exact hazard which Mrs. McGhee encountered.

In our opinion this case was for the jury, and the order directing a verdict for defendant is

Reversed.

Judges VAUGHN and CARSON concur.