PEGGY JOHNSON STURGILL, Administratrix of the Estate of CHARLIE L. JOHNSON, Plaintiff v. ASHE MEMORIAL HOSPITAL, INC., Defendant

No. COA06-1476

(Filed 6 November 2007)

**Medical Malpractice— fall by patient—failure to use restraints—Rule 9(j) certification missing**

The trial court correctly entered summary judgment for defendant based on the failure to include a Rule 9(j) certification in an action involving a disoriented patient's fall in a hospital. Plaintiff argued that the claim was for ordinary negligence arising from failure to follow a fall prevention plan and a failure of supervision, but the complaint concerned the failure to use restraints, which was a medical decision.

Appeal by plaintiff from Order entered 29 August 2006 by Judge John O. Craig, III, in Ashe County Superior Court. Heard in the Court of Appeals 10 May 2007.

*Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for the plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Brenda S. McClearn, for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals from an order granting defendant's motion for summary judgment because of failure to have medical care reviewed by a certifying expert as required for a medical malpractice action by Rule 9(j) of the North Carolina Rules of Civil Procedure. The dispositive issue in this case is whether the use of restraints on a patient is a medical procedure. Because we conclude that the use of restraints in the case *sub judice* is a medical procedure, we affirm.

STURGILL v. ASHE MEM'L HOSP., INC.

[186 N.C. App. 624 (2007)]

## I. Background

"A medical assessment for the use of restraints can be delicate and complex, and as such, requires the application of clinical judgment." According to defendant's internal policy on restraints, the use of restraints requires an order written by a physician or a physician's assistant (PA). When a physician or PA is not immediately available, defendant's policy allows a nurse to initiate the use of restraints if "[b]ased on an appropriate assessment of the patient." An appropriate assessment "includes assessing the patient's medications, orthopedic diseases, neurological status . . . and other medical conditions."

If a nurse initiates the use of restraints, a physician is to be notified immediately if the nurse initiates restraints based on a significant change in the patient's condition. Otherwise, a physician or PA must be notified within one hour of a nurse's initiation of restraints. If the restraints are to remain on the patient, a physician or PA must provide a verbal or written order.

On or about 23 November 2003, Charlie L. Johnson ("decedent"), a seventy-six year-old man, was admitted to defendant hospital. At admission, decedent was disoriented, unable to walk, and suffering from a decreased level of consciousness. Decedent's cardiovascular, neurological and musculoskeletal systems were abnormal. Nurse Violet Barker conducted a nursing assessment of decedent upon his admission to defendant's facility and implemented defendant hospital's fall prevention plan (FPP), putting decedent's bedrails in the "up" position and placing restraints on decedent.

On 24 November 2003 defendant's employees removed the restraints from decedent. At 3:15 p.m. on 25 November 2003, defendant's employees found decedent out of bed and sitting in a chair. Around 7:00 p.m. defendant's employees noted that decedent was neurologically abnormal and suffering from confusion and dementia, and had a low oxygen saturation level and an irregular heartbeat. They assessed decedent as a fall risk "8" according to defendant's FPP. Doctor Clay was notified by phone and ordered nebulizer treatments, but no restraints were placed on decedent. Around 10:00 p.m. defendant's employees looked in on decedent and noted no distress. Decedent was not checked again until 11:30 p.m., when defendant's staff found decedent lying on the floor in his room. Decedent was unresponsive and had suffered head injuries, fractures to his right shoulder and elbow, and injury to his right knee. Decedent was trans-

ferred from defendant's facility to Wake Forest University Baptist Medical Center, where he remained until his death on 12 December 2003.

On 1 December 2005, Peggy Johnson Sturgill, Administratrix of the Estate of Charlie L. Johnson, filed a complaint against Ashe Memorial Hospital, Inc. Defendant answered on 18 December 2005. On 7 June 2006 defendant moved for summary judgment to dismiss the action pursuant to Rule 9(j) and Rule 56 of the North Carolina Rules of Civil Procedure on the grounds that plaintiff failed to have the medical care reviewed by a person qualified under Rule 702 of the Rules of Evidence who is willing to testify that the nursing and medical care did not comply with the applicable standard of practice. On 2 August 2006, an amended motion for summary judgment was filed by defendant to include supporting affidavits. On 3 August 2006, plaintiff submitted supporting affidavits. On 14 August 2006, Judge John O. Craig, III, heard the motion for summary judgment. On 29 August 2006, Judge Craig granted defendant's motion for summary judgment pursuant to Rule 56 and Rule 9(j) of the North Carolina Rules of Civil Procedure, dismissing the complaint with prejudice. Plaintiff appeals.

## II. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). A trial court's grant of summary judgment receives *de novo* review on appeal, and evidence is viewed in the light most favorable to the non-moving party. *Stafford v. County of Bladen*, 163 N.C. App. 149, 151, 592 S.E.2d 711, 713, *disc. review denied and appeal dismissed*, 358 N.C. 545, 599 S.E.2d 409 (2004).

## III. Legal Analysis

Plaintiff contends the trial court erred by classifying her claim as one for medical malpractice and granting summary judgment for defendant on that basis. Plaintiff contends that defendant's motion for summary judgment should have been denied because the complaint alleges that the failure to implement defendant's FPP and failure to supervise decedent do not involve matters of specialized science or skill, therefore constitutes only a claim for ordinary negli-

gence which does not require Rule 9(j) certification. Specifically, plaintiff contends that claims against a hospital do not necessarily allege medical malpractice, citing *Duke University v. St. Paul Fire and Marine Ins. Co.*, 96 N.C. App. 635, 640-41, 386 S.E.2d 762, 766, *disc. review denied*, 326 N.C. 595, 393 S.E.2d 876 (1990) ("[N]egligence actions against health care providers may be based upon breaches of the ordinary duty of reasonable care where the alleged breach does not involve rendering or failing to render professional services requiring special skills.").

Plaintiff further contends that the case *sub judice* is analogous to cases in which this Court classified actions against health care providers as claims for ordinary negligence. To support this contention, plaintiff cites *Lewis v. Setty*, 130 N.C. App. 606, 503 S.E.2d 673 (1998) (moving a patient from an exam table to a wheelchair did not involve specialized knowledge or skill and as such did not constitute medical malpractice requiring Rule 9(j) certification), *Taylor v. Vencor, Inc.*, 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 ("observation and supervision of the plaintiff-nursing home resident, when she smoked in the designated smoking area, did not constitute an occupation involving specialized knowledge or skill"), *disc. review denied*, 351 N.C. 646, 543 S.E.2d 889 (2000), and *Norris v. Rowan Memorial Hospital, Inc.*, 21 N.C. App. 623, 626, 205 S.E.2d 345, 348 (1974) (failing to raise the side rails on the patient's bed in violation of hospital rules and failing to give proper attention "did not involve the rendering or failure to render professional nursing or medical services requiring special skills").

Defendant responds that plaintiff's complaint only alleges that decedent's accident occurred as a result of being unrestrained. Defendant argues that because the use of restraints requires an order from a physician or PA based on clinical judgment, it is therefore a professional service, rendering plaintiff's complaint a claim for medical malpractice, not a claim for ordinary negligence. Accordingly, defendant contends that the complaint was properly dismissed for failure to obtain and include Rule 9(j) certification.

Rule 9(j) provides, in pertinent part:

Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless . . . [t]he pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to

qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j).

As used in Rule 9(j), "the term 'medical malpractice action' means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish *professional services* in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2005) (emphasis added).

"Professional services" has been defined by this Court to mean an act or service " 'arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor [or] skill involved is predominantly mental or intellectual, rather than physical or manual.' " *Smith v. Keator*, 21 N.C. App. 102, 105-06, 203 S.E.2d 411, 415 (quoting *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 14, 157 N.W.2d 870, 872 (1968)), *aff'd*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed*, 419 U.S. 1043, 42 L. Ed. 2d 636 (1974).

In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that "pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim." *Anderson v. Assimos*, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002); *see also Bratton v. Oliver*, 141 N.C. App. 121, 125, 539 S.E.2d 40, 43 (2000) ("A party is bound by his pleadings and, unless withdrawn, amended or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. He cannot subsequently take a position contradictory to his pleadings." (citation and quotation omitted)), *disc. review denied*, 353 N.C. 369, 547 S.E.2d 808 (2001).

Plaintiff's brief characterizes the complaint as analogous to *Norris*, contending that it is partly based on failure to implement defendant's FPP, and also analogous to *Taylor*, contending that it is partly based on defendant's failure to supervise decedent. However, a careful reading shows that the complaint is not based on failure to implement defendant's FPP or on failure to supervise decedent, but is based solely on the lack of restraints on decedent.

The complaint mentions the FPP only in passing when reciting the factual background to the complaint: "nurse Violet Barker implemented the Defendant facility's fall prevention plan and placed his

STURGILL v. ASHE MEM'L HOSP., INC.

[186 N.C. App. 624 (2007)]

bedrails in the 'up' position and placed restraints on the decedent." No other mention of the FPP is made in plaintiff's complaint or supporting affidavits, and the text of defendant's FPP was only admitted into the record by defendant's affidavits. Furthermore, the record indicates that the FPP was followed by defendant's employees, noting that decedent's bedrails were placed in the "up" or raised position. Plaintiff's affidavits also confirm that the bedrails were raised, in compliance with the FPP. In addition, the FPP did not require the staff to check on decedent at regular timed intervals but "every time they pass his room," and plaintiff's complaint shows compliance with this requirement with decedent being checked at varying intervals, as the nurses passed his room.

Plaintiff's complaint makes only one allegation that could be generously construed as being based on the failure of defendant to supervise decedent.

14. At 11:30 p.m., on November 25, 2003, the nursing staff checked Decedent for the first time in an hour and a half. At this time, nurse Sharon Hartzog found the Decedent lying on the floor in his room.

Plaintiff does not allege that defendant had any duty to check on decedent sooner than within an hour and a half, and makes no allegation as to how failing to check on plaintiff during that hour and a half caused plaintiff's injuries. See City of Thomasville v. Lease-Afex, Inc., 300 N.C. 651, 656, 268 S.E.2d 190, 194 (1980) (listing the essential elements of a negligence claim).

While we do not find any allegation in the complaint that alleges ordinary negligence based on failure to follow the FPP, or based on failure to supervise, plaintiff's complaint does state that:

15. As a direct and proximate result of the Decedent being unrestrained, the Decedent was able to climb out of his bed and fall. (Emphasis added.)

From the plain meaning of this statement, plaintiff is basing her complaint on defendant's lack of restraints on decedent as the cause of decedent's fall and resulting injuries, not on the failure to follow the FPP or failure to supervise. In addition, plaintiff's complaint noted the failure of defendant to put restraints on decedent or the lack of restraints on decedent at least seven times. Furthermore, plaintiff's accompanying affidavits state:

If he had been *properly restrained*, my father would not have been able to have gotten out of bed and fallen . . . . If he had been *properly restrained*, Mr. Johnson would not have been able to have gotten out of bed and fallen.

(Emphasis added.)

This statement further shows that the claim was based solely on the hospital's lack of restraints on decedent.

It is undisputed in the record that the use of restraints is a medical decision that normally "requires an order written by a physician or physician's assistant." It is also undisputed in the record that "[a] medical assessment for the use of restraints can be delicate and complex, and as such, requires the application of clinical judgment." Although a nurse can administer restraints on a patient, as nurse Barker did on 23 November 2003, a physician or PA must be notified within one hour and provide an order for the restraint to remain. Because the decision to apply restraints is a medical decision requiring clinical judgment and intellectual skill, *see Smith v. Keator*, 21 N.C. App. at 105-06, 203 S.E.2d at 415, it is a professional service. Consequently, plaintiff's complaint is a claim for medical malpractice, thus requiring rule 9(j) certification.

Finally, plaintiff attempted to put a catch-all negligence allegation in her complaint:

17. At the times and places set forth above, the Defendant, through its employees and agents, were [sic] negligent by failing to act reasonably and diligently with regard to the care, safety, and well-being of the Decedent.

This statement makes reference to the "times and places set forth above," each of which, other than the basic factual context and allegations regarding the state of decedent's health, refers to the lack of restraints placed on decedent.

Although the facts in the case *sub judice* are somewhat similar to the cases cited by plaintiff, she has chosen to base her complaint on the lack of restraints on decedent. Plaintiff did not assert a theory of ordinary negligence in her pleadings based on the failure to implement the FPP or failure to supervise decedent. On review, plaintiff is bound by her pleadings, and may not raise this new theory of negligence for the first time on appeal.

BROWN v. REFUEL AM., INC.

[186 N.C. App. 631 (2007)]

IV.  Conclusion

Rule 9(j) provides that "[a]ny complaint alleging medical malpractice . . . shall be dismissed" if it does not comply with the certification mandate. N.C. Gen. Stat. § 1A-1, Rule 9(j); *Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). ("[M]edical malpractice complaints have a distinct requirement of expert certification with which plaintiffs must comply. Such complaints will receive strict consideration by the trial judge. Failure to include the certification necessarily leads to dismissal."). For the reasons stated above, we hold that plaintiff's original complaint was for medical malpractice and required Rule 9(j) certification. Because Rule 9(j) certification was not included in plaintiff's complaint, the trial court's entry of summary judgment for defendant is affirmed.

Affirmed.

Judges McCULLOUGH and BRYANT concur.