INMAN, Judge.
 

 *414
 
 When a hospital patient injured in a fall during an x-ray examination brings a claim for ordinary negligence, but pre-trial discovery reveals that the fall occurred when the x-ray technician was rending services requiring specialized skill and clinical judgment, the claim sounds in medical malpractice and is subject to dismissal based on the patient's failure to comply with Rule 9(j) of the Rules of Civil Procedure.
 

 Plaintiffs Natalie Gause ("Natalie") and Josie May Gause Brown (collectively "Plaintiffs"), in their respective capacities for decedents Joyce Vera Livingston Gause ("Mrs. Gause" or "Plaintiff Gause"), and her husband, Vertis Ceamore Gause, appeal from an order dismissing Plaintiffs' negligence cause of action and denying Plaintiffs' Motion to Amend the Complaint.
 
 [2]
 
 Because Plaintiffs' complaint sounded in medical malpractice, not ordinary negligence, we affirm the trial court.
 

 I. Factual and Procedural Background
 

 On 16 March 2015, Natalie drove her mother, Mrs. Gause, to the Emergency Department of New Hanover Regional Medical Center ("Defendant" or "New Hanover") because Mrs. Gause was experiencing chest pains related to a fall several days prior. Mrs. Gause was 73-years-old and had a history of falling due to unsteadiness, often requiring assistance to walk distances.
 

 At a triage station in the Emergency Department, a nurse assessed Mrs. Gause's chief complaint, determined her priority status, and ordered the hospital protocol for evaluating a complaint of chest pain. The nurse entered an order requesting,
 
 inter alia
 
 , an "x-ray chest PA or AP."
 

 *415
 
 A posterior-anterior ("PA") chest x-ray requires the patient to be in a standing position with an x-ray board, called a wall bucky, in front of the patient and the x-ray tube behind the patient. An anterior-posterior ("AP") chest x-ray may be taken with the patient standing, sitting, or lying down. A "PA" x-ray is optimal because it provides a superior image with the most information about the patient, allowing a more accurate diagnosis.
 

 After waiting several minutes, Mrs. Gause was taken into a restricted area within the emergency department and assessed by another nurse. Following the second nurse's assessment, the x-ray technician, Kayne Darrell ("Darrell"), met Mrs. Gause and Natalie in the triage hallway and transported Mrs. Gause in a wheelchair to a radiology room. Natalie remained in the hallway.
 

 Darrell and Mrs. Gause were the only two people in the radiology room when Darrell explained the chest x-ray process to Mrs. Gause, stating that she would ask Mrs. Gause to stand at the wall bucky. Darrell asked Mrs. Gause if she thought that she would be able to stand for the x-ray. Mrs. Gause answered, "I think so."
 

 According to Darrell, as soon as Mrs. Gause said, "I think so," to Darrell's surprise she "immediately, and rapidly, stood up, unassisted"
 

 *414
 
 from the wheelchair. According to a doctor with whom Darrell spoke later that day, Darrell said that "she stood the patient up" from the wheelchair.
 

 Darrell watched as Mrs. Gause took a few steps toward the wall bucky, watched Mrs. Gause for three or four seconds, and assessed that Mrs. Gause seemed "very stable." Darrell then turned around and walked several steps away from the patient to move a tube into position to take the x-ray. After three or four seconds, Darrell turned back toward Mrs. Gause and saw her falling backward. Darrell immediately ran to try to break the fall but could not reach Mrs. Gause before her head struck the floor. Mrs. Gause suffered a severe traumatic brain injury as a result of the fall.
 

 Mrs. Gause's brain injury left her unable to communicate and unable to independently perform basic activities of daily living. She became a resident at a long-term nursing care facility where she received twenty-four-hour, around-the-clock care. She died in the nursing care facility on 10 June 2016, approximately 15 months after the fall.
 

 On 15 July 2015, while Mrs. Gause was still living, Plaintiffs filed a complaint in New Hanover County Superior Court alleging Defendant was liable for ordinary negligence and negligence on a theory of
 
 *416
 

 res ipsa loquitur
 
 . In the ordinary negligence claim, Plaintiffs alleged that "Defendant negligently/or carelessly:"
 

 a. transported Plaintiff to and/or from the x-ray room;
 

 b. asked Plaintiff to stand without properly supporting her;
 

 c. allowed Plaintiff to sit up and/or stand without properly securing her;
 

 d. placed Plaintiff in an unsteady position;
 

 e. failed to take adequate measures to support Plaintiff;
 

 f. failed to properly secure Plaintiff while transporting her;
 

 g. allowed Plaintiff to be at risk of falling;
 

 h. failed to take adequate precautions and/or safety measures to prevent Plaintiff from falling while transporting her to and/or from x-ray[.]
 

 ....
 

 The Complaint did not label any claim as one for medical malpractice and did not contain a certification of compliance with Rule 9(j), which requires expert review prior to the filing of a medical malpractice action.
 

 On 1 October 2015, Defendant filed an Answer asserting,
 
 inter alia
 
 , that the Complaint "should be dismissed for failure of the Plaintiff[s] to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure." The parties then proceeded with discovery.
 

 In response to an interrogatory, Plaintiff Gause listed 20 specific ways that Defendant was negligent, including,
 
 inter alia
 
 , contentions that Defendant "[f]ailed to inquire as to Plaintiff's condition, history of falls, limited mobility, problems with standing, and risk of falling;" "[f]ailed to conduct a fall risk assessment to determine whether to take the x-ray PA or AP;" and "[f]ailed to properly administer the x-ray."
 

 Plaintiffs' counsel took the deposition of Darrell, who testified that she assessed Mrs. Gause upon first meeting her and continuing until Mrs. Gause had taken a few steps away from the wheelchair without assistance. Darrell testified that her assessment was based on her clinical judgment and observations of the patient, including the patient's mental status, and on more than 22 years of experience as an x-ray technician.
 

 Following written discovery and depositions, Defendant filed a Motion for Summary Judgment. Two days later, Plaintiffs filed a Motion
 
 *417
 
 to Amend the Complaint to add a claim of medical negligence against Defendant. The proposed Amended Complaint alleged that, pursuant to Rule 9(j), the medical care and relevant records "have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." The proposed Amended Complaint did not allege when the expert review had occurred.
 

 Defendant's Motion for Summary Judgment and Plaintiffs' Motion to Amend came
 
 *415
 
 on for hearing on 4 February 2016 in New Hanover Superior Court, Judge Charles Henry presiding. On 5 April 2016, the trial court entered an order dismissing Plaintiffs'
 
 res ipsa loquitor
 
 claim, dismissing Plaintiffs' negligence claim without prejudice, and denying Plaintiffs' Motion to Amend.
 

 Plaintiffs filed a Notice of Appeal.
 

 II. Standard of Review
 

 Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A trial court's grant of summary judgment receives
 
 de novo
 
 review on appeal, and evidence is viewed in the light most favorable to the non-moving party.
 

 Sturgill v. Ashe Mem'l Hosp., Inc.
 
 ,
 
 186 N.C.App. 624
 
 , 626,
 
 652 S.E.2d 302
 
 , 304 (2007) (citations and internal quotation marks omitted).
 

 III. Analysis
 

 A. Medical Malpractice or Ordinary Negligence Theory
 

 Plaintiffs argue that the trial court erred in dismissing their ordinary negligence claim based on their failure to comply with a pleading requirement applicable only to a medical malpractice claim. We disagree for two reasons. First, Plaintiffs' discovery responses reveal allegations that Defendant was negligent in furnishing or failing to furnish professional services. Second, undisputed evidence produced in discovery shows that Mrs. Gause's injury stemmed from the x-ray technician's activities which required her to use clinical judgment. We conclude that Plaintiffs' claim necessarily sounds in medical malpractice and not in ordinary negligence.
 

 *418
 
 In North Carolina, the distinction between a claim of medical malpractice and ordinary negligence is significant for several reasons, including that medical malpractice actions cannot be brought without prior review of the medical care and relevant medical records by a person reasonably expected to qualify as an expert and to testify that the defendant provided substandard care. N.C. Gen. Stat. § 1A-1, Rule 9(j) (2015). Failure to allege compliance with Rule 9(j) in a complaint for medical malpractice requires dismissal.
 

 Id.
 

 "Whether an action is treated as a medical malpractice action or as a common law negligence action is determined by our statutes[.]"
 
 Smith v. Serro
 
 ,
 
 185 N.C.App. 524
 
 , 529,
 
 648 S.E.2d 566
 
 , 569 (2007). A medical malpractice action is defined in relevant part as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.
 
 [3]
 

 N.C. Gen. Stat. § 90-21.11
 
 (2)(a) (2015). "The statutory definition of medical malpractice is a broad one."
 
 Duke Univ. v. St. Paul Fire and Marine Ins. Co.
 
 ,
 
 96 N.C.App. 635
 
 , 640,
 
 386 S.E.2d 762
 
 , 766 (1990) (citation omitted).
 

 The term "professional services" is not defined by our statutes but has been defined by this Court as "an act or service arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."
 
 Sturgill
 
 ,
 
 186 N.C.App. at 628
 
 ,
 
 652 S.E.2d at 305
 
 (citations and internal quotation marks omitted). Our courts have classified as medical malpractice those claims alleging injury resulting from activity that required clinical judgment and intellectual skill.
 
 See
 

 Sturgill,
 

 186 N.C.App. at 630
 
 ,
 
 652 S.E.2d at
 
 306 ;
 
 Alston v. Granville Health Sys.
 
 ,
 
 221 N.C.App. 416
 
 , 421,
 
 727 S.E.2d 877
 
 , 881 (2012). Our courts have classified as ordinary negligence those claims alleging injury caused by acts and omissions in a medical setting that were primarily manual or physical and which did not involve a medical assessment or clinical judgment.
 
 See, e.g.,
 

 *416
 

 Horsley v. Halifax Reg'l Med. Ctr., Inc
 
 .,
 
 220 N.C.App. 411
 
 ,
 
 725 S.E.2d 420
 
 (2012), and cases cited therein.
 
 *419
 
 This Court in
 
 Sturgill,
 

 186 N.C.App. at 631
 
 ,
 
 652 S.E.2d at 307
 
 , affirmed the trial court's order allowing a motion for summary judgment and dismissing the plaintiff's complaint for failure to comply with Rule 9(j).
 
 Sturgill
 
 involved a claim by the estate of a 76-year-old man who suffered a severe head injury after falling in his hospital room.
 
 Id
 
 . at 625,
 
 652 S.E.2d at 304
 
 . The estate filed a complaint pleading ordinary negligence.
 
 Id.
 
 at 626,
 
 652 S.E.2d at 304
 
 . The defendant argued that the claim was actually for medical malpractice and subject to dismissal because it did not allege compliance with Rule 9(j).
 
 Id.
 
 at 626-27,
 
 652 S.E.2d at 304
 
 . The trial court, and ultimately this Court, agreed.
 
 Id.
 
 at 631,
 
 652 S.E.2d at 307
 
 . Although the plaintiff contended that the hospital, through its nurses, was negligent in failing to follow a fall prevention plan and supervise the decedent, this Court noted that the complaint alleged that the decedent fell because nurses failed to restrain him in his hospital bed.
 
 Id
 
 . at 628-29,
 
 652 S.E.2d at 305
 
 . This Court also cited an affidavit submitted by the plaintiff, filed in opposition to the motion for summary judgment, stating that the decedent was injured because he was not "properly restrained."
 
 Id.
 
 at 629-30,
 
 652 S.E.2d at 306
 
 . This Court held that "[b]ecause the decision to apply restraints is a medical decision requiring clinical judgment and intellectual skill, ... it is a professional service."
 
 Id.
 
 at 630,
 
 652 S.E.2d at 306
 
 .
 

 Also on facts similar to those now before us, in
 
 Alston,
 

 221 N.C.App. at 421
 
 ,
 
 727 S.E.2d at 881
 
 , this Court held that a claim arising from a patient's fall in the hospital sounded in medical malpractice. The decedent in
 
 Alston
 
 was lying unconscious on a hospital operating table when she fell to the floor and was injured.
 
 Id.
 
 at 419,
 
 727 S.E.2d at 880
 
 . The decedent's estate sued the hospital and surgeon on a theory of
 
 res ipsa loquitor
 
 , alleging that it was unknown how the decedent fell and that the injury would not have occurred in the absence of negligence.
 
 Id.
 
 at 419,
 
 727 S.E.2d at 879
 
 . Discovery, however, revealed that the decedent fell because medical personnel had failed to secure her in restraints.
 
 Id.
 
 at 420-21,
 
 727 S.E.2d at 880
 
 . Following the defendants' motions for summary judgment, the trial court dismissed the action for failure to comply with Rule 9(j).
 
 Id.
 
 at 417, 421,
 
 727 S.E.2d at 878, 881
 
 . Affirming the trial court, this Court held that the plaintiff could not state a claim for
 
 res ipsa loquitor
 
 because the cause of the decedent's fall was no longer unknown.
 
 Id.
 
 at 420-21,
 
 727 S.E.2d at 880
 
 . This Court also held that the plaintiff's claim sounded in medical malpractice because "[t]he evidence presented by [the d]efendants in support of their summary judgment motions ... shows that the decision to restrain a patient under anesthesia is one that requires use of specialized skill and knowledge and,
 
 *420
 
 therefore, is considered a professional service."
 
 Id.
 
 at 421,
 
 727 S.E.2d at 881
 
 (citations omitted).
 

 Here, Plaintiffs' Complaint alleged that "Defendant negligently and/or carelessly,"
 
 inter alia
 
 , "failed to take adequate precautions and/or safety measures to prevent Plaintiff [Gause] from falling while transporting her to and/or from x-ray;" and/or "failed to perform such acts and/or take those measures necessary to protect Plaintiff [Gause] from falling." These allegations, general as they are, sound in medical malpractice, because deciding what precautions and measures were "adequate" and "necessary" required medical personnel to use clinical judgment and intellectual skill. But our holding turns on more than the Complaint.
 

 Plaintiffs' interrogatory responses specify numerous contentions that Defendant, through its agents and employees, was negligent in furnishing or failing to furnish the following services: assessing the patient, inquiring about and reviewing the patient's medical history, and administering the x-ray. Each of these services-assessment, inquiry, review, and administering a diagnostic imaging procedure-involves specialized knowledge and skills which are predominantly mental or intellectual, rather than physical or manual.
 
 See
 

 Lewis v. Setty,
 

 130 N.C.App. 606
 
 , 608,
 
 503 S.E.2d 673
 
 , 674 (1998).
 

 Darrell testified in deposition that she assessed Mrs. Gause from the moment they met until the moment Darrell determined that she could walk away from Mrs. Gause to
 
 *417
 
 position the x-ray tube. Darrell testified that her assessment was based upon her clinical experience, judgment, and observations of the patient. Plaintiffs argue it could be reasonably inferred from the evidence that despite her testimony, Darrell used no judgment or skill and performed no assessment of Mrs. Gause, but simply stood her up and walked away, allowing her to fall. Such an inference, however, would not remove this case from the statutory definition of medical malpractice which includes a claim for injury "arising out of the furnishing
 
 or failure to furnish
 
 professional services."
 
 N.C. Gen. Stat. § 90-21.11
 
 (2)(a) (emphasis added).
 

 It is undisputed that Darrell took Mrs. Gause into her care following a nurse's order for "x-ray chest PA or AP." The nature of the order-providing for alternative methods of imaging-necessarily required Darrell to make a clinical judgment regarding how to administer the x-ray. Darrell testified that when making such decisions, "what you're trying to do is-is give the radiologist an optimal image without compromising the patient's safety and comfort." Whether Darrell failed to assess Mrs. Gause or inadequately assessed her in choosing to take a standing
 
 *421
 
 x-ray, Mrs. Gause's injury arose from medical malpractice as defined by statute.
 

 Plaintiffs contend that this case is controlled by a line of decisions classifying claims in medical settings as ordinary negligence. Those cases are all factually and legally inapposite.
 

 In
 
 Norris v. Rowan Mem'l Hosp., Inc.
 
 ,
 
 21 N.C.App. 623
 
 , 623,
 
 205 S.E.2d 345
 
 , 346 (1974), a 75-year-old patient fell from a hospital bed and fractured her hip after nurses failed to raise her bedrails in clear violation of a hospital rule. This Court held that "the alleged breach of duty did not involve the rendering or failure to render professional nursing or medical services requiring special skills[,]" because the nurses were not allowed any discretion about raising the bedrails.
 
 Id.
 
 at 626,
 
 205 S.E.2d at 348
 
 . Unlike the nurses in
 
 Norris
 
 , Darrell was required by the x-ray order to decide whether to take the x-ray with Mrs. Gause standing, sitting, or lying down.
 

 In
 
 Lewis v. Setty
 
 ,
 
 130 N.C.App. at 607
 
 ,
 
 503 S.E.2d at 673
 
 , the plaintiff, a quadriplegic, fell and was injured while being transferred from an examination table to his wheelchair by the defendant doctor and the plaintiff's aide. In holding that the plaintiff's action sounded in ordinary negligence, this Court reasoned that "the removal of the plaintiff from the examination table to the wheelchair did not involve an occupation involving specialized knowledge or skill, as it was predominately a physical or manual activity."
 
 Id.
 
 at 608,
 
 503 S.E.2d at 674
 
 . Unlike the defendants in
 
 Lewis
 
 , Darrell was not engaged in a predominately physical or manual activity when Mrs. Gause fell.
 

 In
 
 Horsley v. Halifax Reg'l Med. Ctr., Inc.
 
 ,
 
 220 N.C.App. at 412
 
 ,
 
 725 S.E.2d at 421
 
 , the plaintiff brought an action for gross negligence after falling from a standing position while admitted as a patient at the defendant hospital. Hospital nurses knew that the plaintiff required assistance to stand or walk without falling.
 
 Id.
 
 at 412,
 
 725 S.E.2d at 420
 
 . Later that evening, the plaintiff was standing against the wall near the nurses' station and said aloud that she was going to fall; however, none of the nurses offered her a wheelchair, cane, or walker.
 
 Id.
 
 at 412,
 
 725 S.E.2d at 421
 
 . The plaintiff fell and was injured.
 

 Id.
 

 The trial court dismissed the plaintiff's claim for failure to include a 9(j) certification.
 
 Id.
 
 at 412,
 
 725 S.E.2d at 421
 
 . This Court reversed the trial court, reasoning that "nothing in the record indicates that the decision to offer a cane to a patient requires a written order or a medical assessment" or "require[s] specialized skill[,]" and therefore "expert testimony ... is not necessary to develop a case of negligence for the jury."
 

 *422
 

 Id.
 
 at 414,
 
 725 S.E.2d at 421-22
 
 . By contrast, Plaintiffs here asserted in their discovery responses that Defendant failed to properly assess Mrs. Gause. And Darrell confirmed in her deposition that deciding whether to take a standing x-ray required assessment and clinical judgment.
 

 Plaintiffs also argue that Defendant is estopped from asserting that this action is one for medical malpractice because Defendant objected to discovery on the basis that Plaintiffs had not alleged a medical malpractice
 
 *418
 
 cause of action. Judicial estoppel bars inconsistent assertions of fact, but generally "the doctrine should not be applied to prevent the assertion of inconsistent legal theories ... such a limitation is necessary to avoid interference with our liberal pleading rules, which permit a litigant to assert inconsistent, even contradictory, legal positions within a lawsuit."
 
 Whitacre P'ship v. Biosignia, Inc.
 
 ,
 
 358 N.C. 1
 
 , 32,
 
 591 S.E.2d 870
 
 , 890 (2004). Plaintiffs' argument is without merit.
 

 In sum, Plaintiffs' claim sounds in medical malpractice and not in ordinary negligence, and it was subject to dismissal for failing to comply with Rule 9(j). Further, because Plaintiffs' Complaint contained no 9(j) certification, it did not allege a viable claim for medical malpractice.
 

 B. Considering Matters Outside the Pleadings
 

 The trial court, consistent with our precedent, determined that Plaintiffs' Complaint was subject to dismissal for failure to comply with Rule 9(j) based in part on written discovery responses and deposition testimony.
 
 See
 

 Alston
 
 ,
 
 221 N.C.App. at 420-21
 
 ,
 
 727 S.E.2d at 880-81
 
 (affirming summary judgment against the plaintiff because evidence produced in discovery revealed that the plaintiff's claim was for medical malpractice and not negligence
 
 res ipsa loquitur
 
 );
 
 Sturgill,
 

 186 N.C.App. at 629-30
 
 ,
 
 652 S.E.2d at 306
 
 (affirming summary judgment against the plaintiff based in part on affidavit submitted in evidence). In arguing that the trial court was prohibited from considering matters outside the pleadings,
 
 [4]
 
 Plaintiffs misconstrue our precedent regarding the interaction between Rule 9(j) and Rule 56 of the North Carolina Rules of Civil Procedure, which provides for dismissal of an action on summary judgment. N.C. Gen. Stat. § 1A-1, Rule 56 (2015).
 

 *423
 
 Plaintiffs misstate the holding by the North Carolina Supreme Court in
 
 Anderson v. Assimos
 
 ,
 
 356 N.C. 415
 
 , 417,
 
 572 S.E.2d 101
 
 , 102 (2002). In that decision, vacating a decision by this Court regarding the constitutionality of Rule 9(j), the Supreme Court held that the issue was not preserved for appeal because the plaintiff's complaint asserted
 
 res ipsa loquitur
 
 "as the sole basis for the negligence claim."
 
 Id
 
 . The Court explained that "pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim[,]" and treated the plaintiff's complaint as a binding judicial admission that his claim, if viable at all, was supported only by the theory of
 
 res ipsa loquitur
 
 .
 
 Id
 
 .
 
 Anderson
 
 has been construed by this Court to prohibit a plaintiff from changing the theory of negligence without first amending the complaint. It does not mean that the trial court must look exclusively to the complaint in deciding on summary judgment that a plaintiff's claim must be dismissed for failure to comply with Rule 9(j).
 
 Anderson
 
 's reasoning was applied by this Court in
 
 Sturgill
 
 when the plaintiff argued a theory of negligence different from the theory alleged in her complaint, which this Court held constituted a claim for medical malpractice.
 
 Sturgill
 
 ,
 
 186 N.C.App. at 630
 
 ,
 
 652 S.E.2d at 306
 
 . This Court held that "plaintiff is bound by her pleadings, and may not raise this new theory of negligence for the first time on appeal."
 
 Id.
 
 at 630,
 
 652 S.E.2d at 306-07
 
 . Plaintiffs' argument is without merit.
 

 *419
 

 C. Motion to Amend
 

 Plaintiffs contend that the trial court abused its discretion in denying Plaintiffs' Motion to Amend the Complaint. We do not have jurisdiction to review the trial court's order as to this issue because Plaintiff's' Notice of Appeal did not refer to or encompass this issue, nor can the issue be fairly inferred from the language in the Notice of Appeal.
 

 Rule 3(d) of the North Carolina Rules of Appellate Procedure provides that a notice of appeal "shall designate the judgment or order from
 
 *424
 
 which appeal is taken...." N.C. R. App. P. 3(d). " Rule 3 is jurisdictional, and if the requirements of the rule are not complied with, the appeal must be dismissed."
 
 Foreman v. Sholl
 
 ,
 
 113 N.C.App. 282
 
 , 291,
 
 439 S.E.2d 169
 
 , 175 (1994) (citation omitted). "[T]he appellant must appeal from each part of the judgment or order appealed from which appellant desires the appellate court to consider...."
 
 Smith
 
 , 43 N.C.App. at 272, 258 S.E.2d at 866.
 
 Smith
 
 recognized that some specific issues may "merge" into broader issues.
 
 Id.
 
 at 272-73, 258 S.E.2d at 866. There, the plaintiff's notice of appeal referred to the trial court's order allowing "Defendants' Motions for Summary Judgment."
 
 Id.
 
 at 272, 258 S.E.2d at 866. This Court held that the notice was sufficient to include in its scope the plaintiff's appeal from the trial court's conclusion that the complaint failed to state a claim for which relief could be granted, noting that "[t]he fact that the trial court labeled the defense in the order as one for failure to state a claim does not prevent us from regarding it as one for summary judgment."
 
 Id.
 
 at 273, 258 S.E.2d at 866-67 (citation omitted). This Court further held that "a notice of appeal should be deemed sufficient to confer jurisdiction on the appellate court on any issue if, from the content of the notice, it is likely to put an opposing party on guard the issue will be raised[.]"
 
 Id
 
 . at 274, 258 S.E.2d at 867.
 

 In this case, Plaintiffs' Notice of Appeal specified that Plaintiffs were appealing the trial court's order "which dismissed Plaintiffs' action without prejudice." Unlike in
 
 Smith
 
 , the trial court's denial of Plaintiffs' Motion to Amend was entirely independent of the trial court's ruling dismissing the action without prejudice.
 
 See
 

 Foreman
 
 ,
 
 113 N.C.App. at 292
 
 ,
 
 439 S.E.2d at 176
 
 (holding notice was insufficient to preserve third issue for appeal because the plaintiffs stated only two issues for appeal in their notice, and the third issue was not sufficient to dismiss the plaintiffs' entire claim). The trial court could have denied Defendant's Motion for Summary Judgment and still rejected Plaintiffs' Motion to Amend. Theoretically, at least, the trial court could have dismissed Plaintiffs' ordinary negligence claim and allowed Plaintiffs' Motion to Amend to state a medical malpractice claim, although our precedent disfavors such an outcome.
 
 See
 

 Alston v. Hueske
 
 , --- N.C. App. ----, ----,
 
 781 S.E.2d 305
 
 , 310 (2016) ("Because the legislature has required strict compliance with [ Rule 9(j) ], our courts have ruled that if a pleader fails to properly plead his case in his complaint, it is subject to dismissal without the opportunity for the plaintiff to amend his complaint under Rule 15(a).");
 
 see also
 

 Keith v. N. Hosp. Dist. of Surry Cty.,
 

 129 N.C.App. 402
 
 , 405,
 
 499 S.E.2d 200
 
 , 202 (1998) ("To read Rule 15 in this manner would defeat the objective of Rule 9(j), which ... seeks to avoid the
 
 filing
 
 of frivolous medical malpractice claims.").
 

 *425
 
 Finally, because the Notice of Appeal identified the order as dismissing the action
 
 without prejudice
 
 , it is not fairly inferred from the Notice that an appeal from the ruling on the Motion to Amend was intended or even necessary. Rule 3(d) can be treacherous for an appellant whose notice identifies one but not all provisions in the order or judgment from which the appellant seeks relief.
 

 IV. Conclusion
 

 For the reasons we have explained, we affirm the trial court's conclusion that this is an action for medical malpractice requiring a certification as provided in Rule 9(j), and we dismiss the remainder of Plaintiffs' appeal for lack of jurisdiction.
 

 AFFIRMED IN PART; DISMISSED IN PART.
 

 Judges DAVIS and ENOCHS concur.
 

 [2]
 

 The trial court's order also dismissed Plaintiffs' claim of injury based on the theory of
 
 res ipsa loquitor
 
 . Plaintiffs do not appeal that portion of the order.
 

 [3]
 

 A "health care provider" is "[a] person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: ... radiology[.]"
 
 N.C. Gen. Stat. § 90-21.11
 
 (1)(a). The parties do not dispute that an x-ray technician is a health care provider.
 

 [4]
 

 Defendant argues that this Court lacks jurisdiction to determine whether the trial court erred by considering matters outside the pleadings because Plaintiffs' Notice of Appeal and Proposed Issues on Appeal contained in the settled record did not designate it as an issue. Defendant's argument is without merit. Rule 3(d) of the North Carolina Rules of Appellate Procedure requires a notice of appeal to identify the party who is appealing, the judgment or order from which the party appeals, the court to which the party addresses the appeal, and the signature of the appealing party's counsel of record. N.C. R. App. P. 3(d). Plaintiffs' Notice of Appeal identified all of the required information and specified that it was appealing from the trial court's order "which dismissed Plaintiffs' action without prejudice." The appeal of the dismissal inherently includes an appeal from the trial court's analysis and conclusions leading to the dismissal, including its reference to matters outside the pleadings.
 
 See
 

 Smith v. Indep. Life Ins. Co
 
 .,
 
 43 N.C.App. 269
 
 , 273,
 
 258 S.E.2d 864
 
 , 867 (1979). Rule 10(b) of the North Carolina Rules of Appellate Procedure requires the appellant to include at the conclusion of the record a numbered list of proposed issues presented on appeal, but the rule also provides that "[p]roposed issues on appeal are to facilitate the preparation of the record on appeal
 
 and shall not limit the scope of the issues presented on appeal in an appellant's brief
 
 ." N.C. R. App. P. 10(b) (emphasis added).