IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-633

Filed 6 May 2026

Stokes County, No. 24CVS000365-840

KAREN LUZZI, in her representative capacity as Executrix of the Estate of Johann Ostman, Deceased, Plaintiff,

v.

VILLAGE CARE OF KING, LLC, Defendant.

Appeal by Plaintiff from order entered 7 November 2024 by Judge Aaron Berlin in Stokes County Superior Court. Heard in the Court of Appeals 24 February 2026.

*The Laws Law Firm, P.C., by Robert B. Laws, for Plaintiff-Appellant.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock, Dana H. Hoffman, and Elaine M. Moyer, for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff Karen Luzzi, as executrix for the estate of Decedent Johann Ostman, appeals from an order dismissing her complaint against Defendant Village Care of King, LLC, for failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Plaintiff argues the trial court erred in granting Defendant's motion to dismiss on the grounds Plaintiff had commenced an action for medical malpractice and was required to comply with Rule 9(j). We hold Plaintiff's claim turns on performance of a professional service that requires specialized skill and clinical judgment; the claim is, therefore, a medical malpractice claim subject to Rule 9(j).

The trial court did not err and properly dismissed Plaintiff's complaint.

## I.    Factual and Procedural History

In or about June 2022, Decedent resided at Village Care of King, a skilled nursing facility in King, North Carolina.  On 1 June 2022, Defendant's care staff transferred Decedent from Decedent's bed to a shower chair in the bathroom using a sit-to-stand lift.  During this transfer, Decedent's right leg was trapped between Decedent's bed and the sit-to-stand lift.  Shortly thereafter, Decedent developed a hematoma on her right leg.  Decedent succumbed to her injury on 15 June 2022.

The Stokes County Clerk of Superior Court appointed Plaintiff the executrix of Decedent's estate on 20 January 2023.  Plaintiff commenced a wrongful death action in Stokes County on 14 June 2024.  The statute of limitations expired on 15 June 2024.  Defendant answered on 26 August 2024, raising fifteen affirmative defenses and moving to dismiss pursuant to Rules 9(j) and 12(b)(6) of the North Carolina Rules of Civil Procedure.  The trial court held a hearing on Defendant's motion to dismiss on 28 October 2024.

During the hearing, the trial court considered affidavits from: (1) Rebecca Rhodes, Defendant's human resources manager; (2) Sandra Parrish, Defendant's records custodian; and (3) Meagan Hankins, Defendant's director of rehabilitation. Based upon the affidavits and included exhibits, the trial court found that the sit-to-stand lift was a medical device requiring specialized skill to operate.  The trial court concluded that the action was a medical malpractice action, not an ordinary

negligence action, and ordered that the complaint be dismissed for failing to satisfy the requirements of Rule 9(j). Plaintiff timely appeals.

## II. Analysis

Plaintiff argues the trial court erred in granting Defendant's motion to dismiss because Plaintiff had commenced a wrongful death action turning on ordinary negligence, not a medical malpractice action. Defendant responds and asserts Plaintiff's action turns on the use of a medical device and professional services, requiring Plaintiff to satisfy Rule 9(j).

"[A] trial court's order dismissing a complaint pursuant to Rule 9(j) is reviewed de novo on appeal because it is a question of law." *Locklear v. Cummings*, 262 N.C. App. 588, 593, 822 S.E.2d 587, 590 (2018) (italics omitted). "Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation modified).

North Carolina statutorily distinguishes medical malpractice from ordinary negligence. A medical malpractice action is "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a) (2023). "Professional services" has been broadly defined to include acts "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involvement is

predominantly mental or intellectual." *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007) (citation modified). Thus, medical malpractice claims arise from negligence of those performing professional services with specialized skill and training in the medical sphere. *See Gause v. New Hanover Reg'l Med. Ctr.*, 251 N.C. App. 413, 418, 795 S.E.2d 411, 415 (2016). In contrast, ordinary medical negligence claims arise from manual or physical acts or omissions and do not require medical assessment, specialized skill, or "clinical judgment." *Sturgill*, 186 N.C. App. at 630, 652 S.E.2d at 306.

If a plaintiff commences an action for medical malpractice, she must conform to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure, which states, in relevant part:

> [a]ny complaint alleging medical malpractice by a health care provider pursuant to [section] 90-21.11(2)a. in failing to comply with the applicable standard of care under [section] 90-21.12 shall be dismissed unless:
>
> (1) [t]he pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by . . . an expert witness . . . who is willing to testify that the medical care did not comply with the applicable standard of care; [or]
>
> . . .
>
> (3) [t]he pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j) (2023).

The purpose of Rule 9(j) is to prevent frivolous medical malpractice actions by requiring medical review prior to the filing of a complaint. *Thigpen v. Ngo*, 355 N.C. 198, 203–04, 558 S.E.2d 162, 166 (2002). If a plaintiff does not appropriately plead specific facts pursuant to Rule 9(j), the trial court *must* dismiss the complaint unless the plaintiff moves to amend their complaint prior to the expiration of the statute of limitations, citing good cause. N.C. R. Civ. P. 9(j); *see also Thigpen*, 355 N.C. at 202, 558 S.E.2d at 165 (emphasizing "no other subsection [of Rule 9] contains the mandatory language 'shall be dismissed[]'" and "[Rule 9(j)] indicates that medical malpractice complaints have a distinct requirement of expert certification with which plaintiffs must comply"). "When ruling on [a motion to dismiss pursuant to Rule 9(j)], a court must consider the facts relevant to Rule 9(j) and apply the law to them." *Phillips v. A Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002).

In this case, Decedent was injured when her leg was pinched by the sit-to-stand device. Plaintiff claims the use of the sit-to-stand device was ordinary negligence because "Decedent was not being transferred by a nurse, physician[] assistant, or physician" and "[t]he transfer was not pursuant to a physicians' directive, nor was the transfer in any way related to" Decedent's medical treatment. Defendant responds that the sit-to-stand device is medical equipment requiring extensive training, including the understanding of a twenty-seven-page manual for its use.

In *Goodman v. Living Centers-Southeast, Inc.*, this Court held that improper positioning of an intravenous instrument was ordinary negligence after the instrument fell on the deceased. *Goodman v. Living Ctrs.-Se., Inc.*, 234 N.C. App. 330, 331, 759 S.E.2d 676, 678 (2014). Ordinary negligence, though medical in nature, turned on a failure to warn the deceased of the instrumentality, and a failure to supervise. *Id.* at 334, 759 S.E.2d at 679–80. This act was an "exercise of manual dexterity as opposed to the rendering of any specialized knowledge or skill." *Id.* at 334, 759 S.E.2d at 680. Thus, the lack of mental labor precluded the underlying action from being a professional service. *See id.* at 333–34, 759 S.E.2d at 679.

This case is distinguishable from *Goodman* because the act does not turn on Defendant's aide failing to warn Decedent of the sit-to-stand device. Instead, the act turns on improper positioning of the medical equipment. The use of the sit-to-stand device warranted close monitoring from Defendant's aide, requiring Defendant's aide to exercise their clinical judgment. Proper use of the device mandated ensuring "the resident is raised and clear of any obstructions, e.g. bed," and calibration of the device once the resident was lifted. If there was any error or problem, the operator should "lower the resident immediately onto a bed or chair." This required mental labor and monitoring and would, thus, constitute performance of a professional service. *See Sturgill*, 186 N.C. App. at 630, 652 S.E.2d at 306.

In *Gause v. New Hanover Regional Medical Center*, the plaintiff underwent a posterior-anterior chest x-ray after complaining of pain. *Gause,* 251 N.C. App. at 414,

795 S.E.2d at 413. To conduct the x-ray, the defendant's technician had to decide the best way to place the plaintiff to produce optimal images and to keep the plaintiff comfortable. *Id.* at 420–21, 795 S.E.2d at 417. Using his clinical judgment, the defendant's technician placed the plaintiff in a standing position. *Id.* at 415, 795 S.E.2d at 413. During the x-ray, the plaintiff fell and suffered a traumatic brain injury, leaving her unable to communicate and complete daily tasks. *Id.* at 415, 795 S.E.2d at 414. This Court held the act rose to medical malpractice because the injury resulted from the use of clinical judgment and the failure to furnish professional services to the applicable standard of care. *Id.* at 417, 795 S.E.2d at 415.

This case is similar to *Gause* because Defendant's aide was charged with competency in the use of the sit-to-stand device, requiring specialized skill and clinical judgment. The sit-to-stand device required extensive training to operate. During the hearing on Defendant's motion to dismiss, the trial court considered evidence which showed Defendant would not permit staff to operate the sit-to-stand device without a demonstration of competency. The specialized training and competency requirements are evidence of required specialized skill and clinical judgment. *See Sturgill*, 186 N.C. App. at 630, 652 S.E.2d at 306. Accordingly, the use of the sit-to-stand device is a professional service, the failure to appropriately provide which being potential grounds for medical malpractice. *See id.* Therefore, Plaintiff was required to comply with Rule 9(j) when filing her complaint.

### III. Conclusion

The trial court did not err in granting Defendant's motion to dismiss for failure to comply with Rule 9(j).

AFFIRMED.

Judges TYSON and FLOOD concur.